UNITED STATES GYPSUM COMPANY *vs.* MYSTIC RIVER
BRIDGE AUTHORITY.

Suffolk.    April 10, 1952. — June 12, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Bridge.    Wharf.    Mystic River Bridge Authority.    Eminent Domain,*
Damages, Acts in pais.    *Damages,* Eminent domain.    *Constitutional
Law,* Eminent domain.    *Easement.    Real Property,* Air space.    *Prac-
tice, Civil,* Exceptions: what questions open; Proceeding for assess-
ment of land damages.    *Limitations, Statute of.    Words,* "Specific
taking, entry, seizure or other act."

The taking by eminent domain of an easement of an air space over a
    parcel of land for the purposes of a high level bridge was the taking of
    an easement in the parcel.    [134]
An owner of land with a wharf thereon bordering on the Mystic River
    had no constitutional right to compensation for impairment of access
    of ships to the wharf suffered when a governmental agency, by au-
    thority of the Legislature, constructed a pier for a high level highway
    bridge in the bed of the river in tide water on land owned by the
    Commonwealth as part of the public domain; but the Legislature
    could provide for such compensation.
The Mystic River Bridge Authority, which, within the statutory powers
    granted to it for the purpose of building a high level highway bridge,
    took an easement of an air space over a parcel of land with a wharf
    thereon bordering on the Mystic River and constructed a pier in the
    bed of the river in tide water on land owned by the Commonwealth
    as part of the public domain, was liable to pay damages to the owner
    of such parcel for impairment of access of ships to the wharf through
    the presence of the pier under St. 1946, c. 562, § 14, and the phrase
    of G. L. (Ter. Ed.) c. 79, § 12, "in case only part of a parcel of land is
    taken there shall be included damages for all injury to the part not
    taken caused by the taking or by the public improvement for which
    the taking is made."
The question whether a petition for assessment of damages under G. L.
    (Ter. Ed.) c. 79 was brought within the time limited thereby was one
    of jurisdiction which was open in this court although not raised in
    the respondent's answer.    [141]
In the phrase "specific taking, entry, seizure or other act" in the fourth
    sentence of G. L. (Ter. Ed.) c. 79, § 10, the words "other act" mean
    something of the same kind and character as to definiteness and
    finality in creating rights in a landowner as do the words "specific

taking, entry, seizure," and did not apply to the construction of a pier for a bridge which required several months for its accomplishment. [141–142]

A petition for assessment of damages for impairment of access of ships to a wharf of the petitioner through construction of a pier for a highway bridge by a governmental agency, which was done without any formal vote or order of the agency and required several months for its accomplishment, was governed by the last provision of G. L. (Ter. Ed.) c. 79, § 10, vesting the right to damages "upon the completion of the public improvement which caused the injury" and was seasonably filed where filed within one year after the construction of the pier was finished.

PETITION, filed in the Superior Court on February 13, 1950.

The case was tried before *Donahue*, J.

*Edward O. Proctor,* (*Arthur V. Sullivan & James W. Kelleher* with him,) for the respondent.

*Stuart C. Rand & G. d'Andelot Belin, Jr.,* for the petitioner.

RONAN, J. This is a petition for the assessment of land damages alleged to have been sustained by the petitioner by the construction of a high level toll bridge by the respondent over the Mystic River connecting Chelsea and the Charlestown district of Boston. The jury awarded damages in the sum of $262,950, of which they found $50,550 was due to damages resulting from the taking of an easement in the form of an air space over a part of the petitioner's land and $212,400 was on account of damages resulting from the location of one of the piers of the bridge. The case is here on various exceptions of the respondent.

The petitioner has owned and occupied since 1928 a parcel of land on the Mystic River in the Charlestown district of Boston which contains 232,770 square feet and borders for 434.53 feet along the pierhead and bulkhead line on the southerly side of the north channel of the river. The upper part of this area consists of the Reading dock or slip of 97,900 square feet and an area of 10,300 square feet covered by wooden wharves. The petitioner is engaged in the manufacture of plaster board or sheet rock and rock lath, a plaster base which is used largely as a substitute for wood or metal lath in constructing buildings. Rock gypsum,

the raw material for these products, is mined in Nova Scotia, and down to 1947 was transported by water to the Charlestown plant and other Atlantic coast plants of the petitioner in bulk cargo vessels, with holds for the cargo, which were owned or chartered by the petitioner. These vessels owned by the petitioner measured a little over 361 feet in length and 52 feet 6 inches in breadth, and when loaded had a draft of 21 feet 6 inches. Their capacity was about 7,000 tons. The chartered vessels did not differ materially in type or dimensions from the petitioner's vessels. These vessels were not unloaded against the face of the petitioner's wharf but were docked against a camel or wooden float 15 feet wide which was placed between the wharf and the vessel. This procedure was necessary as the water was too shallow next to the wharf and any dredging might endanger the sea wall which had been built subsequent to the Civil War by putting loose stones in a trench and building a masonry structure upon the stones. These vessels were unloaded by a crane travelling along a track so as to place its boom at right angles to the wharf and over the holds and removing a part of the cargo from each hold so as to avoid straining the vessel until the vessel was entirely unloaded.

The respondent was created by St. 1946, c. 562, as amended by St. 1947, c. 626, to build a bridge for vehicular traffic between Chelsea and Boston. It was authorized to locate the bridge, to acquire land and easements, to make contracts for its erection, to issue bonds, to collect tolls, and to supervise and maintain the bridge until its costs were fully paid, and the bridge was then to be turned over to the Commonwealth. In erecting the bridge a pier known as pier M2 was placed in the bed of the river upon land admittedly owned by the Commonwealth as a part of the public domain. The side of this pier was not parallel to the face of the petitioner's wharf for the nearest downstream corner was 77 feet and the upstream corner 95 feet distant from the wharf. This pier was completed on May 29, 1949.

The petitioner in 1946 contracted for the construction of two self unloading vessels which were larger than those it

had been using. These vessels were completed in 1947, but the first one did not arrive in Charlestown until August 20, 1948, after the cofferdam for the pier had been built. These new vessels were 441 feet in length and 64 feet in breadth, and their draft when loaded was 24 feet 6 inches. The cargo is discharged by permitting the gypsum to fall through gates at the bottom of V shaped holds, which regulate the flow, upon a belt conveying the gypsum to the stern and then by means of another belt to a shore installation equipment, by which it is deposited in one of the silos. This installation equipment was planned for in 1947 and was placed prior to August 20, 1948, at a distance from the downstream end of the wharf so as to be opposite to where the stern of the larger vessels would be docked far enough upstream so as to be safe from striking the pier. This installation equipment needed for the unloading of the larger vessels was too heavy to move to permit the travelling crane to pass and so prevented the latter from functioning efficiently in the unloading of the bulk cargo vessels. The crane's track had been shortened from 223 feet to about 150 feet. The installation equipment unloaded the larger vessels from the stern and, it being dangerous to dock these vessels between the wharf and the pier, this installation device could not be placed nearer to the downstream end of the wharf than it was. It was necessary for the petitioner to use both types of vessels as the smaller vessels could operate during the winter from a port on the Bay of Fundy where the larger vessels could not operate and when Hantsport, the port regularly used by the larger vessels, was closed because of ice. The petitioner had storage facilities for only a three weeks' supply of gypsum, and an interruption of transportation would cause a closing of its plant resulting in a loss of about $8,000 a day. The petitioner in May, 1948, purchased a parcel having 100 feet river frontage next adjacent upstream to the Reading slip and contemplates closing the open mouth of this slip and extending the tracks of the travelling crane across the slip and onto this new parcel. We need not mention the other various losses which the

petitioner contends it has sustained by the building of the pier or the amount that the market value of its premises has thereby decreased, for the respondent concedes that, if the petitioner is entitled to recover damages by reason of the construction of the pier, there was evidence sufficient to support the finding of the jury that the damages due to this cause amounted to $212,400. The question of law presented is whether the respondent is liable to pay such compensation.

Before passing to this question of law, it is necessary to mention that the respondent on September 8, 1949, took an easement of an air space over part of the petitioner's property, the base of which was 123.5 feet above mean low water,[1] about 152 feet in length and about 46 feet in width. The air space taken was of unlimited height above this base. The base of this horizontal plane had an area of 6,621 square feet. The bridge occupies the lower part of this air space. The respondent makes no objection to the award of $50,550 on account of the taking of this easement which actually interferes with the beneficial use of the land and which the parties properly regarded as the taking of an easement on the petitioner's land. *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511, 528–529. *Burnham* v. *Beverly Airways, Inc.* 311 Mass. 628, 635. *United States* v. *Causby,* 328 U. S. 256. *Portsmouth Harbor Land & Hotel Co.* v. *United States,* 260 U. S. 327. *Butler* v. *Frontier Telephone Co.* 186 N. Y. 486. *Maitland* v. *Twin City Aviation Corp.* 254 Wis. 541. Indeed, the respondent on June 29, 1951, filed an offer of judgment in the amount of $50,550 for damages due to the taking of this easement.

The important question is whether the petitioner is entitled to compensation for damages due to the construction of the pier which is located in the bed of a navigable river at a place always covered by tide water and upon land owned by the Commonwealth as a part of the public domain. The

---

[1] The base of this space was about 110 feet above the surface of the petitioner's land and a short distance from the exhaust stacks which are between the silos and almost under the bridge. These silos were about 80 feet high. The tops of the stacks are so near the base of the bridge that it will be necessary to move the stacks.

Commonwealth consented to such use of the locus as may be "necessary for the construction or operation of the project," St. 1946, c. 562, § 14,[1] for which it was to receive no compensation. § 5. No part of the pier rests upon any land in which the petitioner has any proprietary interest. The placing of this structure by a governmental agency authorized by the Legislature to do so, for the accomplishment of some public purpose, or by a railroad or some other public service corporation if likewise authorized, would not constitutionally require the payment of compensation to a landowner who had thereby sustained an impairment of access to his wharf. Our Constitution, Declaration of Rights, art. 10, merely provides that "whenever the public exigencies require that the property of any individual should be appropriated to public use, he shall receive a reasonable compensation therefor." The owner of a wharf upon land bordering on an arm of the sea is not entitled to compensation under our Constitution or at common law if navigation between his property and the sea is destroyed by the authorized construction of a bridge without a draw between his property and the sea. It was said in *Butchers Slaughtering & Melting Association* v. *Boston*, 214 Mass. 254, 257, "It is settled that at common law the petitioner is remediless," and in *Brackett* v. *Commonwealth*, 223 Mass. 119, 123, "Doubtless the injuries sustained by the petitioners were of a kind for which at common law no action would lie and no constitutional right would have been infringed if no provision for compensation to them had been made." Furthermore, it has frequently been held that where access to the sea by a riparian owner has been cut off by the construction of a bridge farther down the navigable stream, or where the bridge as located over the channel interferes with free access to the owner's wharf or prevents him from docking a vessel in a space which he had previously used, such owner has, in the absence of some statutory provision, no enforceable claim for his damage. This principle

---

[1] The sections hereinafter mentioned, unless otherwise designated, refer to the sections contained in St. 1946, c. 562.

would be especially true where, as here, the petitioner's wharf borders the southerly side of the northerly channel and the obstruction of which it complains is lawfully placed in what is apparently the bed of the channel on land which the Commonwealth holds as a part of the public domain.  *Commonwealth* v. *Breed,* 4 Pick. 460.  *Fitchburg Railroad* v. *Boston & Maine Railroad,* 3 Cush. 58.  *Davidson* v. *Boston & Maine Railroad,* 3 Cush. 91.  *Boston & Worcester Railroad* v. *Old Colony Railroad,* 12 Cush. 605.  *Blackwell* v. *Old Colony Railroad,* 122 Mass. 1.  *Thayer* v. *New Bedford Railroad,* 125 Mass. 253.  *Dwyer* v. *New York, New Haven & Hartford Railroad,* 209 Mass. 419.  *Burke* v. *Commonwealth,* 283 Mass. 63, 69.

The grounds upon which these decisions rest, including the origin of the rights of the Commonwealth to tide water lands and to supervise and regulate the public right in navigable waters in the interests of navigation — and it has sometimes been said for other public purposes [1] — and the privileges of owners abutting on navigable waters, have been exhaustively examined and settled in leading decisions by eminent judges and need not be repeated here. *Commonwealth* v. *Alger,* 7 Cush. 53, 90, 93.  *Commonwealth* v. *Roxbury,* 9 Gray, 451, 483–484.  *Home for Aged Women* v. *Commonwealth,* 202 Mass. 422.  *Jubilee Yacht Club* v. *Gulf Refining Co.* 245 Mass. 60.

The rights of the Commonwealth in tide water lands are subject to the authority of the United States for the purpose of improving navigation, and if the pier had been erected by the Federal government in the course of construction of a high level bridge to take the place of the old drawbridge and so in the interest of navigation and damages, similar to those now in question, had been thereby sustained in its property by the petitioner, the latter would not be entitled to compensation under the Constitution of the United

---

[1] Many of our cases involved the construction of railroad bridges, such as *Davidson* v. *Boston & Maine Railroad,* 3 Cush. 91, *Boston & Worcester Railroad* v. *Old Colony Railroad,* 12 Cush. 605, *Blackwell* v. *Old Colony Railroad,* 122 Mass. 1, and *Thayer* v. *New Bedford Railroad,* 125 Mass. 253.

States[1] or at common law. *Gibson* v. *United States*, 166 U. S. 269. *Scranton* v. *Wheeler*, 179 U. S. 141. *United States* v. *Chandler-Dunbar Water Power Co.* 229 U. S. 53. *Lewis Blue Point Oyster Cultivation Co.* v. *Briggs*, 229 U. S. 82. *United States* v. *Chicago, Milwaukee, St. Paul & Pacific Railroad*, 312 U. S. 592. *United States* v. *Commodore Park, Inc.* 324 U. S. 386.

The Legislature, however, is not limited in providing compensation to damages which the landowner is entitled to receive as a matter of constitutional right but may extend compensation to instances where an exercise of eminent domain would result in a real hardship to one whose property has been damaged or injured if he were deprived of compensation. *Burr* v. *Leicester*, 121 Mass. 241, 243. *Watuppa Reservoir Co.* v. *Fall River*, 134 Mass. 267. *Earle* v. *Commonwealth*, 180 Mass. 579. *Rockport* v. *Webster*, 174 Mass. 385, 392. *Dodge* v. *Rockport*, 199 Mass. 274, 276. *Brackett* v. *Commonwealth*, 223 Mass. 119, 123. *Connor* v. *Metropolitan District Water Supply Commission*, 314 Mass. 33, 37. For a similar power possessed by Congress see *Joslin Manuf. Co.* v. *Providence*, 262 U. S. 668, 676–677; *United States* v. *Willow River Power Co.* 324 U. S. 499, 510.

The respondent contends that damages similar to those sustained by the petitioner's land on account of the pier have never been allowed as compensable damages where the land has been injured by a public improvement. It relies upon the earlier cases which have already been cited. Many of these earlier cases were decided upon general principles without any reference to the special statutes in accordance with which the public improvement was undertaken, or to the general laws governing the payment of compensation in eminent domain cases. It was held in *Boston & Worcester Railroad* v. *Old Colony Railroad*, 12 Cush. 605, in denying relief for damages to a wharf owner, which complained that access to its wharf had been impeded and that it had been

[1] The Fifth Amendment to the Constitution is the only pertinent provision and reads in part as follows: "nor shall private property be taken for public use, without just compensation."

deprived of the use of a space at its wharf that had been used as a berth for vessels lying at the wharf by a railroad bridge, that such damages did not come within Rev. Sts. c. 39, § 56, providing that "Every rail road corporation shall be liable to pay all damages, that shall be occasioned by laying out and making and maintaining their road . . . and such damages shall be estimated by the commissioners, in the manner provided in the case of laying out highways," that is, according to Rev. Sts. c. 24, § 31, which provided that "the jury shall take into consideration all the damage done to the complainant, whether by taking his property, or by injuring it in any manner . . . ." The court considered the erection of the bridge in that case as the exercise of a public right and that the damage suffered by the riparian owner was damnum absque injuria.

Our inquiry is whether the Legislature intended that the damages caused by the pier were to be paid for by the respondent. The pertinent part of § 14 reads as follows: "Any person damaged in his property by the exercise of any of the powers granted by this act may recover his damages from the authority under chapter seventy-nine of the General Laws." The terms of the section are broad and general. The damages caused by the erection of the pier come within the description in the act of the damages for which compensation is to be made. The respondent was held liable in *Woodbury* v. *Beverly*, 153 Mass. 245, for discharging surface water from streets upon the petitioner's land where the statute, Pub. Sts. c. 52, § 15, provided that, "When an owner . . . sustains damage in his property by reason of any raising, lowering, or other act, done for the purpose of repairing such way," he may recover damages. The petitioner recovered damages in *McNamara* v. *Commonwealth*, 184 Mass. 304, for the drying up of his well when the statute, St. 1895, c. 488, § 12, required the payment of damages caused "by . . . or by any other act or thing done by said board under this act." The city was found liable in *Fifty Associates* v. *Boston*, 201 Mass. 585, for damage for the destruction of property located under the surface of the

street where the statute, St. 1895, c. 440, § 1, provided that damages should be paid "for any property taken, or injured, by said commission under authority of this act." The statute, St. 1908, c. 404, § 4, in *Spaulding* v. *Plainville*, 218 Mass. 321, provided for the payment of damages caused "by . . . or by anything done . . . under authority of this act." The petitioner in that case recovered for the diversion of water. In *F. F. Woodward Co.* v. *Fitchburg*, 236 Mass. 364, the statute, St. 1912, c. 440, § 3, provided for the payment of "damages sustained by . . . or by any other thing done by the city under the authority of this act." Damages were awarded for cutting off all access to the petitioner's warehouse. The instant case belongs to this class of cases where damages actual and real, "capable of being pointed out, described and appreciated," *Parker* v. *Boston & Maine Railroad*, 3 Cush. 107, 113–114, result from the performance of any authorized act by an official or a board empowered to undertake and complete some public work. This conclusion is further supported when § 14 of the bridge act is construed, as it should be, *Sheldon* v. *Boston & Albany Railroad*, 172 Mass. 180, 182, with G. L. (Ter. Ed.) c. 79, § 12.

The damages sustained by the construction of the bridge were to be enforced and assessed in accordance with G. L. (Ter. Ed.) c. 79. The present petition was properly brought under § 12 of c. 79 [1] to obtain all the damages sustained by the construction of the bridge. This structure was planned, erected, and completed as a single public improvement. *Quinn* v. *Mayor & Aldermen of Springfield*, 233 Mass. 595, 597–598. *King* v. *Board of Aldermen of Springfield*, 247 Mass. 548, 551. An easement in the petitioner's land had been taken, and it is plain that the effect of the entire public work upon its premises is to be considered. In assessing

---

[1] "The damages for property taken under this chapter shall be fixed at the value thereof before the taking, and in case only part of a parcel of land is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made . . . . In determining the damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel . . . ."

the damages expressly granted by § 14, the Legislature intended by its reference to c. 79 that these damages should be measured, *Wyman* v. *Boston*, 282 Mass. 204, 207, under the appropriate section of c. 79, and that in cases like the present they should be assessed "for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made." G. L. (Ter. Ed.) c. 79, § 12.[1] For instance, an owner whose only complaint is an interference with his view caused by the construction of public work is not entitled to damages, *McKeon* v. *New England Railroad*, 199 Mass. 292, but one a part of whose land has been taken has the right to have considered in determining the diminution in the market value of his premises the interference with his view in the trial of a petition brought under § 12 of c. 79. *Barnes* v. *Commonwealth*, 305 Mass. 339, 340.

The evidence was sufficient to warrant an inference at least that the petitioner had the right to lay vessels against its wharf for the purpose of unloading them, *Jubilee Yacht Club* v. *Gulf Refining Co.* 245 Mass. 60, 62, and the fact that vessels were usually docked against a camel, although sometimes at high tide against the face of the wharf, does not support the respondent's objection that the petitioner's real complaint was that the pier deprived it of the unloading of vessels by use of the camel, but we think this objection related to the manner adopted for the discharging of the vessels rather than the existence of the right to discharge them adjacent to the wharf. *Dodge* v. *Rockport*, 199 Mass. 274, 277.

As it does not appear that the location and construction

---

[1] Indeed, this section is captioned "Measure of damages," *Charles 1. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495, 501, and in the Preliminary Report of the Commissioners to Consolidate and Arrange the General Laws, Vol. I, page 23, which may be referred to, *Hertrais* v. *Moore*, 325 Mass. 57, 59, it is stated in a note to what is now § 12 that the second phrase in the first sentence of this section, that is, "and in case only part of a parcel of land is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made," is so worded "as to make it clear that all incidental effects of the public improvement which impair the value of the property" are to be regarded, so as to avoid the rule in *Walker* v. *Old Colony & Newport Railway*, 103 Mass. 10.

of the pier were effected by any formal vote or order of the respondent, it is contended that the damages thereby sustained came from an act in pais and that the petition for damages must be filed within the time prescribed by G. L. (Ter. Ed.) c. 79, § 10.[1]  The respondent also contends that the pier was built up to mean low water on January 24, 1949, when all the injury to the petitioner's land had been fully accomplished, and that the petition filed more than a year thereafter was filed too late.  The point is open although not pleaded.  *Nicklas* v. *New Bedford,* 250 Mass. 471.  *Jordan* v. *County Commissioners of Bristol,* 268 Mass. 329.

The Legislature granted permission to the respondent to use the land of the Commonwealth for the construction of the bridge, and there was no need of any formal vote or order by the respondent to effect any "specific taking, entry, seizure or other act" mentioned in G. L. (Ter. Ed.) c. 79, § 10.  The quoted words "specific taking, entry, seizure" are unequivocal terms denoting that the landowner has actually parted with his property or its possession or some interest therein.  They signify a physical invasion of the land and they would comprehend a trespass if unauthorized by the owner.  Each of them represents a completed transaction.  The respondent relies upon the words "other act" appearing in this section as applying to the erection of the pier.  The statute refers to an act which causes damage of one kind or another.  We think the words "other act" must be construed to mean something of the same kind and character as to definiteness and finality in creating rights in the landowner as do the words with

---

[1] Section 10 so far as material reads as follows: "In case of a specific taking, entry, seizure or other act causing destruction or damage or depriving the owner of the use of his property permanently or for a definite period of time the damages shall be assessed as of the date of such taking, entry, seizure or other act and the right thereto shall vest on such date and a petition for an award of damages therefor under this section may be filed within one year thereafter; otherwise damages shall be assessed with respect to any parcel of property as of the date when such property was first injuriously affected, the right thereto shall vest upon the completion of the public improvement which caused the injury, and a petition for an award of damages therefor under this section may be filed within one year after such completion."

which they are associated. The building of the pier required several months. At some stage in its construction it began to deprive the petitioner of the use of the downstream end of its wharf. The respondent contends that the full extent of the damage was realized when the pier reached mean low water level on January 24, 1949, but it is admitted that its construction continued thereafter and that it was not finished until May 29, 1949. The statute requires a definite and distinct act as beginning the period in which a petition for damages may be filed. The Legislature did not intend to put the burden upon the landowner to determine when in the partial performance of a piece of work the period for bringing a petition would start to run against him. See *United States* v. *Dickinson*, 331 U. S. 745. General Laws (Ter. Ed.) c. 79, § 10, differs from § 9 of that chapter, as amended by St. 1938, c. 172, § 7, in that the latter provides for separating various portions of the public work in considering whether a petition for damages arising from a particular portion was seasonably filed. *Wine* v. *Commonwealth*, 301 Mass. 451. We think that the instant petition falls within the last provision of G. L. (Ter. Ed.) c. 79, § 10, and that it was filed in time.

In view of what has been said it is not necessary to discuss any of the specific exceptions taken by the respondent. All of them have been considered. The exceptions must be overruled.

*So ordered.*