**COMMONWEALTH of Kentucky, DEPART-MENT OF HIGHWAYS, Appellant,**

**v.**

**James A. WILLIAMS et al., Appellees.**

Court of Appeals of Kentucky.

Sept. 22, 1972.

Rehearing Denied Dec. 15, 1972.

Steinfeld, C. J., dissented and filed opinion.

Osborne, J., dissented and filed opinion in which Reed, J., joined.

Don Duff, Dept. of Highways, Frankfort, Francis T. Goheen, Goheen, Schultz & Yaffe, James D. Robertson, Dept. of Highways, Paducah, for appellant.

Richard C. Roberts, Waller, Threlkeld & Whitlow, Paducah, for appellees.

NEIKIRK, Justice.

This is a condemnation proceeding by the Commonwealth of Kentucky, Department of Highways, involving the taking of 0.37 of an acre of land for right-of-way purposes in order to construct Interstate Highway 24. The 0.37 of an acre of land taken was from a 63-acre tract of land belonging to James Williams and William Williams and located in Lyon County on the Eddy Creek embayment of Barkley Lake. The only controversy between the Commonwealth and the landowners is over the amount of compensation for the taking. The jury awarded the landowners $52,000. Judgment was entered against the Commonwealth. The Commonwealth appeals. We reverse.

In August 1965, the landowners recorded in the Lyon Circuit Court Clerk's office a plat of their property, dividing the property into seventy-four lots. Fourteen of the lots fronted on the lake. The 0.37 of an acre taken was a narrow strip of land on the lake at a corner of the tract. The plans for the highway provided for a fill on the landowners' land and for a bridge over the Eddy Creek embayment of the lake.

The evaluation opinions of the various witnesses for both parties and the verdict of the jury were as follows:

| WITNESS | BEFORE | AFTER | DIFFERENCE |
|---|---|---|---|
| "FOR APPELLANT | | | |
| Gilliam | $ 30,200 | $29,800 | $ 400 |
| Sloan | 31,500 | 30,750 | 750 |
| FOR APPELLEE | | | |
| Williams | 126,500 | 56,000 | 70,500 |
| Spann | 150,000 | 50,000 | 100,000 |
| Paris | 120,000 | 20,000 | 100,000 |
| Hall | 148,000 | 96,200 | 51,800 |
| Stegar | 115,000 | 60,000 | 55,000 |
| VERDICT | | | |
| Jury | 108,000 | 56,000 | 52,000" |

It is apparent from the evidence that the witnesses for the landowners reached their opinions as to the extent of diminution in value of the tract on the basis of the fill, the bridge, and the highway. These witnesses pointed out that the noise and fumes from automobiles and trucks using the highway would seriously depress the value of the property for lake-resort residential development. These same witnesses fur-

ther testified that the bridge over the lake would obstruct a portion of the view of the lake from all seventy-four lots, and considering the intended use of the land, this would drastically decrease the value of the remaining property. The trial court overruled the Commonwealth's objection to this testimony and permitted the landowners' witnesses to give their evaluation opinion based on the effect that the entire bridge and fill, as well as the use of the highway, would have on the property. The Commonwealth insists that the trial court erred in its ruling, as only a small portion of the improvements was located on the portion condemned.

In our opinion, the testimony of the landowners' witnesses as to the effect the taking had on the value of the property should have been restricted to the damages occasioned by the use of the portion that was taken. This would not include damages by reason of the entire highway, fill, and bridge located on the lands of others. Had the highway been constructed along or near the landowners' property lines without any of their land being taken, the landowners would not be entitled to any damages, although the highway, the fill, and the bridge would have the same depreciating effect as envisioned by the landowners' appraisal witnesses. In a condemnation case, the damages to which the landowner is entitled for a taking of a part of his lands are limited to the diminution in value resulting from the taking and from the use to which the portion taken is to be put. Although there is some authority to the contrary, the predominant view is that no damages should be awarded by reason of the use of other lands located near or adjacent to, but not part of, the lands taken from the landowner. 4 Nichols on Eminent Domain, 3rd Edition, Section 14.-21(1), and cases cited.

The landowners contend that Commonwealth, Department of Highways v. Elizabethtown Amusements, Inc., Ky., 367 S.W.2d 449 (1963), supports the proposition that compensation may be allowed for damages caused by the building of a highway on land taken from other owners. The case does not support that proposition. The opinion refers to damages from "the use to which the condemned property will be put," and the damages allowed in that case were from lights and noise from the use of that part of the highway constructed *on the land taken.*

In addition to Elizabethtown Amusements, Inc., supra, the landowners cite Commonwealth, Department of Highways v. Burns, Ky., 394 S.W.2d 923 (1965), and Commonwealth, Department of Highways v. Carson, Ky., 398 S.W.2d 706 (1966), as supporting the proposition that a jury in a condemnation case may be permitted to consider as a factor in determining "after value" the effect of "aesthetic damages" on the "remainder." While those cases recognize that aesthetic factors may be considered, they do not hold that damages, from aesthetic considerations or otherwise, may be allowed for use of land other than that taken from the condemnee. In each of the cited cases, the road split a farm, and the claimed damages were attributable to that part of the road built on the land taken.

In Commonwealth, Department of Highways v. Raybourne, Ky., 364 S.W.2d 814 (1963), we said:

"It is our opinion that any depreciation in market value of the remaining land of a person directly attributable to a taking of a portion of his land may be recovered, even where the depreciation is due solely to aesthetic factors. We see no difference in this from allowing damages for depreciated value from fear of explosion of a gas pipe line. See Gulledge v. Texas Gas & Transmission Corp., Ky., 256 S.W.2d 349. However, since aesthetic factors are so intangible and variable, we think strong proof of damages from those factors should be required."

The landowners contend that it is difficult, if not impossible, to separate the aes-

thetic-factor damages attributable to the use of the land actually taken from those attributable to the use of the lands of others, and that, therefore, the owner of the remainder area is entitled to all damages caused by the entire public project. We think that an equally valid argument might be that by reason of the difficulty of separation, the landowners should not be awarded *any* damages for aesthetic factors. In any event, the difficulty here suggested does not impress us as being any greater than the general difficulty of estimating damages in all condemnation cases.

*It is obvious that the major depreciation* factor in the estimates by the landowners' witnesses was attributable to the use of land other than that taken from these landowners. The verdict could not rest on those estimates.

We need not discuss other contentions urged by the Commonwealth as, doubtless, these alleged objectionable matters will not occur during another trial of this case.

The judgment is reversed.

HILL, MILLIKEN, and PALMORE, JJ., concur.

STEINFELD, C. J., dissents and files dissenting opinion.

OSBORNE and REED, JJ., dissent. Dissenting opinion filed by OSBORNE, J., with REED, J., joining in dissent.

STEINFELD, Chief Justice (dissenting).

The opinion declares that the evidence adduced on behalf of the condemnee should have been " * * * restricted to the damages to the remainder [of the land] occasioned by the use of the portion that was taken." I respectfully disagree as I believe the correct view was announced in Andrews v. Cox, 129 Conn. 475, 29 A.2d 587 (1942), wherein it was stated:

"But where the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put, the effect of the whole improvement is properly to be considered in estimating the depreciation in value of the remaining land."

Here, it is impossible separately to ascertain what damages were caused to the untaken Williams' land by the proposed use on the taken portion apart from that brought about by the whole project. See Orgel, Valuation under Eminent Domain, Section 55.

Furthermore, we have adopted the rule that the damage to the remainder, if any, must be reduced by the enhancement in its value caused by its relation to the project. See Commonwealth, Department of Highways v. Priest, Ky., 387 S.W.2d 302 (1965), as modified by Commonwealth, Department of Highways v. Eberenz, Ky., 435 S.W.2d 753 (1968). Unless we abandon this rule (which I do not advocate), the majority opinion has given birth to grave inconsistency and unfair treatment of the condemnee.

For these reasons, I respectfully dissent.

OSBORNE, Justice (dissenting).

This court for a great number of years has experienced considerable difficulty in its effort to determine just what property rights a landowner is entitled to be compensated for when his property is condemned for public use. The main battle has been raged primarily over the landowners' rights to compensation for loss of access. Upon this point I have previously expressed my views and reasons therefor. See Commonwealth, Department of Highways v. Hess, Ky., 420 S.W.2d 660, p. 663. They were restated when the problem was again faced by this court in Commonwealth, Department of Highways v. Carlisle, Ky., 442 S.W.2d 294. Justice Reed recognized the deplorable condition of the opinions of this court in his dissent in Commonwealth, Department of Highways v. Duiguid, Ky., 469 S.W.2d 707. Since

the publication of the foregoing opinions, there has appeared in the Kentucky Law Journal an excellent article dealing with the general subject. See 60 KLJ 727, Loss of Access—A right to be Compensated. I will not review in detail the serpentine path of this court upon the subject as the case presently before us is not a loss of access case nor is it strictly one of compensation for the destruction of aesthetic value, as is intimated by the majority opinion.

James and William Williams are the owners of a subdivision on Barkley Lake. This property was subdivided back in 1965. There were seventy-four lots, fourteen of which fronted directly on the lake. This is unique property in that it is suited for resort-type homes or lodges located in beautiful surroundings covered in forest and fronting on a large lake. It is reasonably accessible to the main highway system and to electricity and is sufficiently secluded so that those who live there can have a feeling of isolation. Its main value is derived as the result of all of the foregoing features.

Adjacent to the Williams' subdivision the Kentucky Department of Highways, in conjunction with the federal government, now proposes to construct a portion of Interstate Highway 24. In order to do so, they wish to condemn and take approximately one-third acre of the subdivision over which they will construct a rough, raw, earth fill leading to a bridge across the Eddy Creek embayment. This will destroy the isolation features of the property and convert it into a tract of land near a highway just as millions of others across this nation. The highway will practically destroy the market value of the subdivision. The question now before this court plainly and simply stated is: Is this the taking of a citizen's property to be applied to public use for which he is entitled to just compensation?

Article I, Section 13 of the Kentucky Constitution provides:

"No person shall, for the same offense, be twice put in jeopardy of his life or limb, nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him."

Without further legal explanation and without sophisticated rationalization, I am of the opinion that the state has taken the Williams' property and it should pay just compensation. The case has been tried before a jury as prescribed by our rules of procedure. The verdict is well within the range of the testimony. In my opinion the judgment should be affirmed.

REED, J., joins in this dissent.