ROMAN CATHOLIC BISHOP OF SPRINGFIELD vs.
COMMONWEALTH.

Hampden. March 5, 1979. — July 5, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Eminent Domain*, Damages. *Damages*, Eminent domain.

Under G. L. c. 79, § 12, the owner of land on which the Commonwealth
took drainage and slope easements to remedy a drainage problem
created by the construction of a nearby highway was entitled to
recover damages both for the taking and for noise damage caused
by the traffic on the highway. [382-387]

PETITION filed in the Superior Court on February 20,
1968.

The case was tried before *Tisdale*, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Elizabeth Bowen Donovan*, Assistant Attorney Gener-
al, for the Commonwealth.

*John J. Egan* for the plaintiff.

QUIRICO, J. This is a petition for assessment of damages
under the eminent domain statutes. See G. L. c. 79, § 14.
By an order dated December 29, 1965, the Common-
wealth laid out Interstate Route 291, a limited access
highway, in the city of Springfield. The highway passed
near and parallel to the Notre Dame High School, which
is a private educational institution operated by the peti-
tioner (a corporation sole) on his own land. No land be-
longing to the petitioner was taken in connection with
the original laying out of Route 291. After the highway
was constructed, a drainage problem developed on the
petitioner's land because of a change in grade of an abut-

ting sidewalk which had been reconstructed in the course of the highway construction project. On October 4, 1967, the Commonwealth took drainage and slope easements on the petitioner's land to remedy this drainage problem.[1]

The present petition for assessment of damages was filed on February 20, 1968. See G. L. c. 81, §§ 7, 7C; G. L. c. 79, §§ 14, 16. The petitioner presented evidence tending to show two kinds of damage: (1) damage due to the taking of the easements, and (2) functional damage to Notre Dame High School due to traffic noise from Route 291. The Commonwealth contended that only the first kind of damage should be considered. The estimates of various expert witnesses as to the amount of damage suffered ranged from $100 to over $130,000. The jury assessed damages in the aggregate amount of $119,000. The judge entered the verdict under leave reserved. The Commonwealth then moved for verdict under the leave reserved and for a new trial. After an unexplained delay of more than three years, the judge denied these motions and entered judgment in accordance with the verdict. The Commonwealth appealed, and we ordered the case transferred to this court on our own motion. See G. L. c. 211A, § 10(A). We affirm.

The case presents for our decision the single question of law whether the damages awarded comport with the measure provided in G. L. c. 79, § 12. That section provides in relevant part that "[t]he damages for property taken under this chapter shall be fixed at the value thereof before the recording of the order of taking, and in case only part of a parcel of land is taken there shall be included damages for all injury to the part not taken caused by the taking *or by the public improvement for which the taking is made* ..." (emphasis supplied).[2] The Common-

---

[1] Although the trial testimony indicated that the drainage problem was the result of a change in grade of a street other than Route 291, the order of taking recited that the easements were "necessary in connection with the construction and/or reconstruction of" Route 291.

[2] General Laws c. 79, § 12, as amended through St. 1978, c. 411, § 1,

wealth argues that the quoted language entitles the petitioner to recover for noise damage only to the extent such damage arose from the taking of a drainage easement. Because it is clear as a matter of law that there is no causal relation between the drainage easement and the traffic noise, the Commonwealth concludes that judgment should have been entered for at most $1,260. The petitioner argues, on the other hand, that they are entitled to all damages caused by use of Route 291 because the easement was taken in connection therewith. We are constrained to agree with the petitioner.

Prior to 1918, when the Legislature enacted the present eminent domain laws, the question posed by the polar positions of the parties was settled by the so called "increased proximity" rule articulated in *Walker* v. *Old Colony & N. Ry.*, 103 Mass. 10 (1869). In considering the question whether a landowner might recover for noise emanating from a railroad constructed in part on the landowner's land, we said: "It is only so far as the annoyances and inconvenience arising from [the operation of the railroad] are increased by reason of the taking of a part of the land, that they are to be considered, as an incident of such taking, in estimating the damages or depreciation of value." *Id.* at 15. Accord, *Lincoln* v. *Commonwealth*, 164 Mass. 368, 376-377 (1895); *Titus* v. *Boston*, 161 Mass. 209, 212 (1894); *Taft* v. *Commonwealth*, 158

---

also provides that, "[i]n determining the damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel . . . ." See also G. L. c. 79, § 9 (accrual of right to damages when no taking occurs). With the parties, we assume that the noise damage caused by use of Route 291 would not have been independently actionable under this clause if no easement had been taken from the petitioner's land. See generally Annot., 51 A.L.R. 3d 860 (1973). But cf. *Baker* v. *Boston Elev. Ry.*, 183 Mass. 178, 184-186 (1903) (noise of elevated railway amounting to private nuisance was special and peculiar injury to abutting land and compensable regardless of whether any part of land taken for railway).

Mass. 526, 548 (1893); *Wellington* v. *Boston & Me. R.R.*, 158 Mass. 185, 189 (1893); *Johnson* v. *Boston*, 130 Mass. 452, 454 (1881). Justice Holmes explained that the rule is not "an arbitrary principle that taking part of petitioner's land lets in a claim to damages otherwise not allowable, . . . but only that so far as increased proximity is the source of the trouble it may be allowed for." *Taft* v. *Commonwealth, supra.*

In origin, the increased proximity rule was probably conceived as a corollary of, and perhaps an amelioration of, the principle that a landowner may not recover consequential damages due to a taking of nearby land. See *Rand* v. *Boston*, 164 Mass. 354, 356 (1895), overruled by *Hyde* v. *Fall River*, 189 Mass. 439, 442 (1905) (special and peculiar damages recoverable absent taking). See generally 4A Nichols, Eminent Domain § 14.1[1], at 14-6 to 14-27 (Sackman rev. 3d ed. 1976). In application, it avoids the anomaly of permitting widely disparate recoveries by neighboring landowners who, but for some minimal or nominal taking of the property of one, are similarly situated with respect to offensive public improvements. See *Baker* v. *Boston Elev. Ry.*, 183 Mass. 178, 185 (1903); *Rand* v. *Boston, supra* at 363-367 (Knowlton, J., dissenting). Furthermore, the rule pragmatically recognizes the value of a landowner's right to exclude offensive uses from a parcel of land by compensating him when a taking brings such a use within the bounds of his property.

Notwithstanding the apparent equity of our increased proximity rule, the rule has attracted almost no following in the courts of other States. 1 L. Orgel, Valuation Under the Law of Eminent Domain §§ 54-57, at 253-266 (2d ed. 1953). Two cases in particular illustrate the difficulty other courts have perceived in that rule. See *Andrews* v. *Cox*, 129 Conn. 475, 481-483 (1942); *Haggard* v. *Independent School Dist.*, 113 Iowa 486, 493-495 (1901). The general rule elsewhere appears to be that, in a case of partial taking, where it is possible to separate injuries, the landowner may recover additional damages only for use of the

taken property, but that all injuries caused by the public improvement are compensable if they are inseparable. See, e.g., *Campbell* v. *United States,* 266 U.S. 368, 371-372 (1924); *Commonwealth* v. *Williams,* 487 S.W.2d 290, 292-293 (Ky. 1972); *State* v. *Board of Educ.,* 116 N.J. Super. 305, 313-317 (1971).

The preceding observations serve as background to a discussion of the relevant statutory history. By Res. 1916, c. 43, the Legislature appointed "commissioners for consolidating and arranging the general laws. . . ." The Commissioners' Preliminary Report, embodying suggested substantive changes, was completed on January 7, 1918. It contained, among other things, a proposed draft consolidating all procedural laws relating to eminent domain. Section 12 of that proposed draft is nearly identical to the present G. L. c. 79, § 12, in respects here material. The Commissioners explained: "The second clause of the first sentence [concerning partial takings] is intended to do away with a doubt which has arisen from conflicting decisions of the court and is not based on any existing statute. It is so worded as to make it clear that all incidental effects of the public improvement which impair the value of the property, for example, in the case of a railroad the noise and smoke, are to be taken into consideration in determining the damages to remaining land where a taking of part is made, thus doing away with the rule laid down in *Walker* v. *Old Colony R.R. Co.,* 103 Mass. 10 [1869], that the damages to the part not taken are to be only the difference between the actual damages and the damages that would have been inflicted if the railroad or other public improvement had been located close to the land without taking any of it. This rule sounds well in theory, but in practice brings in speculative considerations not suited to court procedure. It is not the law in other states, and, because of its practical difficulties, has not been followed in several later cases in this Commonwealth. See the dissenting opinion of Knowlton, J., in *Rand* v. *Boston,* 164 Mass. 354, 365 [1895]; also the deci-

sions in *Hyde* v. *Fall River*, 189 Mass. 439 [1905] (overruling *Rand* v. *Boston*) and *Baker* v. *Boston Elevated Ry. Co.*, 183 Mass. 178, 185 [1903]." Preliminary Report at 23. The proposed draft was enacted later in 1918. See St. 1918, c. 257, sec. 187, § 12.

This legislative history indicates that the General Court intended in 1918 to abolish the increased proximity rule. See Hanify, Elements of Damages in Eminent Domain — A New England View, 34 B.U.L. Rev. 146, 155-157 (1954). Any doubt that might have existed (see *Wright* v. *Commonwealth*, 286 Mass. 371, 373 [1934]) was dispelled by our decision in *United States Gypsum Co.* v. *Mystic River Bridge Auth.*, 329 Mass. 130 (1952). In that case, the Authority constructed a pier to support the Mystic River Bridge on a publicly owned portion of the riverbed. The placement of this pier interfered with the petitioner's use of docking facilities on its own land. Thereafter, the Authority took an air easement above the petitioner's land. *Id.* at 131-134. In an action seeking damages arising from the construction of the bridge, we upheld a jury verdict awarding damages both for the taking of the air space and for the loss of use of the docking facilities, even though the two elements of damage were clearly unrelated. *Id.* at 140. We specifically noted the pertinent legislative history. *Id.* at 140 n.1.

Some uncertainty remains over whether a landowner may recover all consequential damages arising from a public improvement merely because part of his land is taken therefor or whether, instead, he may recover only for those injuries which are special and peculiar to the remaining, untaken land. The court decisions cited by the Commissioners in their 1918 Preliminary Report suggest that the Commissioners sought legislative adoption of the position taken by Justice Knowlton, to the end that damages would be assessed identically in cases of partial taking and of no taking. See *Hyde* v. *Fall River*, *supra* at 439; *Rand* v. *Boston*, *supra* at 363-367 (Knowlton, J., dissenting). The language of their draft, and of the present G. L.

c. 79, § 12, is not, however, apt to achieve this result. *United States Gypsum* also leaves this question unresolved, for the loss of use of docking facilities suffered by the petitioner in that case was surely special and peculiar by any common sense test. We need not now decide this unresolved question because the parties have not raised it. It is enough to hold that the increased proximity rule, upon which the Commonwealth placed its sole reliance at trial, is not the law of Massachusetts.[3] See *Lawrence Plate & Window Glass Co.* v. *Varrasso Bros.*, 353 Mass. 631, 632 (1968); *Pattelena* v. *Segel*, 346 Mass. 726, 729-730 (1964).[4]

We recognize that the petitioner in this case may be recovering damages for the element of noise while other persons whose land is also affected by traffic noise along Route 291 have not been compensated therefor. The line separating those persons who do and those who do not recover for this element of damage resulting from a public improvement has been fixed by the Legislature on the basis of whether any part of their land has been taken for the project. It is not for us to pass on the wisdom of where the line is drawn, for that is a legislative matter.

For the foregoing reasons, the judgment entered below must be affirmed.

*So ordered.*

---

[3] We do not now attempt to decide every case in which a part of a parcel of land is taken. See *Malone* v. *Commonwealth, ante* 74, 77 n.6, where we expressed a similar caution.

[4] Similarly, it is not now open to the Commonwealth to argue that G. L. c. 83, § 4, limits its liability in the present circumstances, that the drainage easement had no relationship to Route 291, or that the statute of limitations had run on the petitioner's claim for noise damages before this action was begun. These arguments were not presented to the trial court, and, so far as we can tell from the record, might have been effectively rebutted by the petitioner if they had been raised.