# United States Court of Appeals

## For the First Circuit

No. 02-1369

PORTLAND NATURAL GAS TRANSMISSION SYSTEM;
MARITIMES & NORTHEAST PIPELINE, L.L.C.,

Plaintiffs, Appellants,

v.

19.2 ACRES OF LAND, MORE OR LESS, IN HAVERHILL, MA;
11.36 ACRES OF LAND, MORE OR LESS, IN HAVERHILL, MA;
9.92 ACRES OF LAND, MORE OR LESS, IN HAVERHILL, MA;
WBC EXTRUSION PRODUCTS, INC.;
FLEET BANK OF MASSACHUSETTS, N.A.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Patti B. Saris, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Cyr, Senior Circuit Judge.

James T. Finnigan, with whom Rich May, PC was on brief, for appellants.
James D. Masterman, with whom Richard D. Vetstein and Masterman, Culbert & Tully, LLP were on brief, for appellee WBC Extrusion Products, Inc.

January 31, 2003

**TORRUELLA**, **Circuit Judge**.  The Fifth Amendment permits the federal government to take personal property for public use, but requires payment of "just compensation."  Plaintiffs-appellants, Portland Natural Gas Transmission System and Maritimes & Northeast Pipeline, L.L.C. ("the Pipeline Companies"), took by eminent domain temporary and permanent easements on land in Haverhill, Massachusetts owned by defendant-appellee, WBC Extrusion Products, Inc. ("WBC"), to construct, operate and maintain a pipeline as permitted by the Natural Gas Act, 15 U.S.C. § 717f(h).  A bench trial was held in the United States District Court for the District of Massachusetts to determine the amount of compensation due.  The court determined that WBC was entitled to $152,677 plus interest.  The Pipeline Companies appeal, claiming that the amount is not justified by the evidence produced at trial.  We affirm.

## I.  Background

The facts of this dispute are detailed in the district court's opinion, Portland Natural Gas Transmission Sys. v. 19.2 Acres of Land, 195 F. Supp. 2d 314, 316-19 (D. Mass. 2002), and we repeat only those necessary to our decision.  At the time of the taking, WBC owned two parcels totaling approximately seventy-six acres.  Parcel 1 was divided into eight lots to be used for an industrial park; Parcel 2 was a non-buildable vacant lot.  WBC occupied Lot 7 in Parcel 1, and the other seven were empty and for sale.  The permanent gas pipeline easement is fifty feet wide and

-2-

runs through Lots 1 and 8 on Parcel 1 and through Parcel 2, encumbering approximately 2.37 acres total. The temporary easement ran along a similar path, reaching approximately 2.10 acres total.

## II. Standard of Review

We review the district court's findings of facts, including the amount of compensation due, for clear error. Fed. R. Civ. P. 52(a); S. Nat. Gas Co. v. Land, Cullman County, 197 F.3d 1368, 1372 (11th Cir. 1999) ("This court reviews the district court's determination of just compensation for clear error."); Puerto Rico Ports Auth. v. M/V Manhattan Prince, 897 F.2d 1, 3 (1st Cir. 1990). Our job is not to weigh the evidence anew, but simply to determine whether the decision reached by the trial court is "plausible in light of the record viewed in its entirety." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985). The fact that the ruling was substantially based on physical or documentary evidence, rather than credibility determinations, does not alter our deferential analysis. Id. Any rulings of law are subject to de novo review. United States v. Mass. Water Res. Auth., 256 F.3d 36, 47 (1st Cir. 2001).

As this case is fact intensive, we note that the appellant has a difficult task of overcoming the trial court's findings. Determining the value of real estate is not a science, and the decision of a lower tribunal is ordinarily not disturbed unless "grossly inadequate or excessive." 4A Julius L. Sackman,

Nichols on Eminent Domain § 17.1[4], 23.01 (rev. 3d ed. 2001) (hereinafter Nichols on Eminent Domain).

### III.  Discussion

The land taken by the Pipeline Companies is in Massachusetts, and the district court applied Massachusetts law to determine the just compensation to which WBC was entitled.  As the parties do not contest this choice of law and there is no indication that it makes any difference as to any of the contested issues, we accept this premise without necessarily endorsing it.[1] Under Massachusetts law, just compensation is defined as

> the value [of the land] before the recording of the order of taking, and in case only part of a parcel of land is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made.

Mass. Gen. Laws ch. 79, § 12 (2002).  Therefore, although the easement did not abrogate all of WBC's bundle of rights, WBC is entitled to compensation for the decrease in value of the land

---

[1]  The federal eminent domain statute involved here provides that "[t]he practice and procedure in any action or proceeding for [eminent domain] in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated." 15 U.S.C. § 717f(h).  Perhaps surprisingly, several circuits have read the phrase "practice and procedure" to encompass state substantive law as well as formal practice. See, e.g., Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement, 962 F.2d 1192, 1194-99 (6th Cir. 1992).  For the reasons indicated, we need not pursue this interesting subject in the present case.

-4-

encumbered by the easement as well as the decrease in value of the other land on the lots, or the "remaining land." In addition, WBC is entitled to compensation for the temporary easement, or the two years when the Pipeline Companies were using part of WBC's land for construction of the pipeline. The compensation awards for these three areas -- the encumbered land, the remaining land, and the land temporarily taken -- are the subject of this appeal.

## A. Encumbered and Remaining Land

In 1998, the Pipeline Companies promulgated "Requirements for Construction On or Near Company Facilities" (the "Requirements") to protect their pipelines from encroachment and disturbance caused by construction activity on or near the easement. WBC claimed that the easement together with the Requirements rendered the permanent easement area worthless.[2] The Pipeline Companies' expert testified that the encumbered land was still useful and retained fifty percent of its value. The district court found that the Requirements diminished the value of the encumbered land beyond the Pipeline Companies' suggestion of fifty percent. The court found that "a potential buyer who has read [the Requirements] would be likely to fear a substantial degree of infringement on the land encumbered by a permanent easement," and

---

[2] The district court's determinations that the highest and best use of Lots 1 and 8 is industrial use, and the highest and best use of Parcel 2 is open land, as well as its determination of the per acre value of the land, are not challenged.

determined that the encumbered land was reduced in value by seventy-five percent. Portland Natural Gas, 195 F. Supp. 2d at 324. The court also determined that the Requirements reduced the value of the remaining land by ten percent because "[a] reasonable buyer, after reading the [Requirements], would almost certainly anticipate that building in the vicinity of the easement areas of Lots 1 and 8 would involve extra administrative 'hassle,' and possible extra construction expenditures." Id. at 324. The Pipeline Companies argue that the diminution of the encumbered land is only fifty percent and that there is no diminution of the remaining land. The Pipeline Companies claim that (1) the damages theory employed by the district court was not litigated and therefore constituted unfair surprise, and (2) there was no evidence that the Requirements diminished the value of the encumbered or remaining land.

## 1. **Unfair Surprise**

The Pipeline Companies claim that the effect of the Requirements on the value of the land was not litigated and was not considered an issue by the Pipeline Companies, and that they were therefore unfairly surprised and prejudiced when the district court awarded damages based on the Requirements. Appellants assert that the unfair surprise necessitates a new trial and that the district

court lacked authority to enter judgment on the issue because it had not been squarely litigated.[3]

The record indicates that the parties addressed the Requirements issue in their motions and papers before the court. WBC stated that the Requirements diminished the value of the land in question, while appellants emphasized that the effect of the Requirements can only be determined on a case by case basis. A motion in limine discussed and included the Requirements.

The Requirements issue also consumed extensive time at trial. In his opening statement, WBC's counsel stated that the Requirements would be discovered by a reasonably prudent buyer, and that the "nub of the dispute" was what that buyer would do when faced with the Requirements. The Requirements were introduced into evidence without objection and outlined by Franklin Gessner, a witness for appellants. The Pipeline Companies' expert, Steven Foster, had not been provided with the Requirements before making his estimation of damages, and stated that his figures might have been different had he considered the Requirements. The judge directly asked Foster several questions about a possible diminution associated with the increased construction costs and the hassle of dealing with the Pipeline Companies due to the Requirements.

---

[3] We note, without reaching the issue, that appellants' failure to ask for a continuance may be fatal to their claim of unfair surprise. See United States v. Díaz-Villafañe, 874 F.2d 43, 47 (1st Cir. 1989) (suggesting that unfair surprise may usually be cured by a request for a continuance).

-7-

Foster responded that "on a rational level . . . there would be [diminution]," although stating that he did not have market data to verify the judge's intuition. Finally, during appellants' closing argument, the judge stated that "the ordinary and reasonable person reading [the Requirements] would read them and say: I've got to worry about them." With the plethora of evidence to the contrary, the Pipeline Companies' argument that they were prejudicially surprised when the court determined diminution in value based on the effect of the Requirements must fail.

## 2. Impact of the Requirements

Under Massachusetts law, WBC is entitled to recover for all incidental effects of the public improvement that impair the value of its land. Roman Catholic Bishop v. Commonwealth, 392 N.E. 2d 829, 831 (Mass. 1979). This includes not only the lost value of the encumbered land, but any "damages to the remainder that are to be reasonably anticipated from use of the property for the purpose for which the condemnation is made." Nichols on Eminent Domain § 14A.06[3]. Eminent domain is a concept of equity and fairness, and the law attempts to make the landowner whole. Id. at 14.02[1][a].

The district court found the encumbered land to be diminished by seventy-five percent, based in part on the effect of the Requirements. The court also determined that the Requirements reduced the value of the remaining land on Lots 1 and 8 by ten

percent.  This was based on the court's view that "[p]otential buyers may reasonably fear that the presence of underground pipelines on their property may make commercial construction more costly and inconvenient on the adjacent land."  Portland Natural Gas Transmission Sys., 195 F. Supp. 2d at 325.  Appellants claim that there was no basis for determining by what precise amount or percentage the Requirements adversely affected the value of the land.

The trier of fact is "authorized to determine damages in an amount to which no expert testified by rejecting the precise amounts to which each expert testified."  Nichols on Eminent Domain § 17.1; see also Loschi v. Mass. Port Auth., 282 N.E.2d 418, 419-20 (Mass. 1972) (upholding a jury verdict in excess of expert testimony because fact-finder could also consider photographs and other witness testimony).  The judge was entitled to reject the experts' valuation and to use her independent judgment to determine value.  Piemonte v. New Boston Garden Corp., 387 N.E.2d 1145, 1152 (Mass. 1979).  The court considered the Requirements themselves, photographs, and expert and lay testimony in determining that the value of the Requirements had a negative impact on the value of the land.  Its decision as to the extent of the resulting diminution in value was not clearly erroneous.

A reading of the Requirements supports the court's determination that the Requirements would decrease the price a

reasonable buyer was willing to pay for the land. The Requirements provide that the encumbered land may not be used for structure, storage, or trees. Further, a landowner must submit proposed plans to the Pipeline Companies for authorization before beginning any work on or near the easement. Approval is also required for many other uses that would commonly be undertaken on a vacant industrial lot, including grade reduction, movement of heavy equipment across the easement, installation of electrical cables, power lines, and telephone lines, and blasting and excavation. Finally, the Pipeline Companies "reserve[] the right to set forth additional requirements if deemed necessary."

The Pipeline Companies assert that the Requirements do not impact the land's value because prospective buyers may choose to use the land in a way that conforms with the Requirements. We find the existence of such a buyer doubtful given the breadth of the Requirements and appellants' discretion to modify them as it wishes. In addition, prospective owners would have to deal with the added burden of obtaining approval from the easement holder before undertaking any work on the vacant lot. The inference that the Requirements impact the property's value is common sense: if a similarly-situated industrial lot exists that is free from the pipeline easement and the Requirements that go along with it, a potential buyer will likely forego the WBC lot in favor of the unencumbered lot. Therefore, WBC must lower its price to attract

buyers.  This is a logical consideration, and the fact that no expert spelled out this exact argument does not mean the judge could not arrive at it on her own.

The court heard conflicting evidence regarding the extent of the impact of the easement and Requirements on the land.  The Pipeline Companies' expert testified based on "experience and judgment" that the encumbered land was reduced in value by fifty percent, although he admitted that there is no standard in the industry for determining diminution and that he had heard of different valuations in other cases, ranging from forty to seventy-five percent.  This expert, however, did not have the benefit of the Requirements when making his estimate, as they were not provided to him by the Pipeline Companies.  A witness for WBC stated that he believed the Requirements negatively impacted the land.  Witnesses also debated what administrative burden the Requirements would place on a landowner.

In light of all the evidence, the district court, acting as fact-finder, "made its determination[] based on its reasonable assessment of the conflicting evidence before it."  Northeast Drilling, Inc. v. Inner Space Servs., Inc., 243 F.3d 25, 34 (1st Cir. 2001).  The court's determination was not clearly erroneous.

### B.  Temporary Easement

WBC's expert opined that the temporary easement effectively delayed the sale of, and any development on, the lots

-11-

for the full two-year period.  He testified that developers had verified this hypothesis, stating that so long as unencumbered lots were available, buyers would go elsewhere.  The Pipeline Companies urged the court to simply award the rental value for those sections of each lot taken temporarily.  The court did so but also awarded six months rental value for all of Lots 1 and 8.  The Pipeline Companies challenge this additional award.

Compensation for a temporary taking is generally determined by "(1) ascertaining the value of the property for the period it is held by the condemnor; (2) ascertaining the difference in the value of the property before and after the taking; or (3) looking at the fair market rental value of the property during the time it was taken."  Nichols on Eminent Domain § 12E.01[1].

We find the district court's determination a reasonable ascertainment of the value of the property taken.  The court heard testimony that prospective buyers desire to begin construction within twelve months, and the court found that construction on WBC's land generally would begin within eighteen months of purchase.  Because the Pipeline Companies required access to a portion of the land, development likely could not begin until the end of the temporary easement.  Thus, a potential buyer would wait until six months after the temporary taking had begun before purchasing the property, or would adjust his offer to reflect this waiting time.

## IV.  Conclusion

We **<u>affirm</u>** the decision of the district court determining just compensation.  Costs are granted to appellee.