ONORATO BROTHERS, INC. *vs.* MASSACHUSETTS TURNPIKE
AUTHORITY.

Middlesex.    April 1, 1957. — May 8, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Eminent Domain,* Damages, Injury to property not taken. *Damages,*
Eminent domain. *Evidence,* Of value, Relevancy and materiality.

Damages respecting four lots of land which once had been part of a tract
under a single ownership but which had been lost by the landowner
through foreclosure of a mortgage before a taking of most of the other
lots in the tract by eminent domain could not be recovered by the
landowner, on a petition for assessment of damages for the lots taken,
on the basis of a taking of only part of a parcel and recovery for injury
to the part not taken under G. L. (Ter. Ed.) c. 79, § 12.  [57]
On the record of a proceeding for assessment of damages against the
Massachusetts Turnpike Authority, the mere presence of survey
stakes placed by the Authority on certain lots of land with houses
thereon which were not taken by it did not show injury permitting
recovery of damages under St. 1952, c. 354, §§ 7, 15; G. L. (Ter. Ed.)
c. 79, §§ 10, 12; and it was proper to exclude expert testimony as to
the value of the lots before and after the placing of the stakes.  [57–59]
In a proceeding for assessment of damages for a taking of several lots of
land by eminent domain, evidence of the amount remaining due on a
mortgage of the lots was, on the record, of little, if any, significance
on the question of the value of the lots and was not improperly ex-
cluded.  [59–60]

PETITION for assessment of damages filed in the Superior
Court on September 21, 1955.

The case was tried before *Macaulay,* J.

*Arthur Sherman,* for the petitioner.

*Francis V. Matera,* (*Harold Katz* with him,) for the
respondent.

CUTTER, J.    The petitioner purchased in 1953 lots 61–67
and lot 80 in a section of Framingham.    The respondent
took (under St. 1952, c. 354) by eminent domain, by order
dated March 24, 1955, part of lot 65 and the whole of lots
66, 67, and 80.    Entry was made on March 30, 1955.    Prior

to the taking the petitioner had built speculative houses on lots 61–64, and after these houses were completed, the respondent put a number of stakes on these lots for the purpose of making surveys and plans. Thereafter, but prior to March 24, 1955, the holder of the mortgage on lots 61–64 foreclosed that mortgage.

The petitioner filed on September 21, 1955, its petition under G. L. (Ter. Ed.) c. 79, § 14, for assessment of damages for the lots actually taken. It seeks to recover also for injury to lots 61–64 which it contends was caused by placing stakes on these lots. The case is here on the petitioner's bill of exceptions relating to rulings (described in detail later) of the trial judge excluding certain evidence. The pertinent provisions of St. 1952, c. 354,[1] and certain related provisions of G. L. (Ter. Ed.) c. 79,[2] are set out in the margin.

1. The petitioner asked two real estate experts and the president of the petitioner questions about the value of lots 61–64 before and after the placing of survey stakes on these

---

[1] Statute 1952, c. 354, § 7 (see fourth paragraph), reads in part: ". . . the Authority and its authorized agents and employees may enter upon any lands . . . for the purpose of making surveys, soundings, drillings and examinations as they may deem necessary or convenient for the purposes of this act, and such entry shall not be deemed a trespass, nor shall an entry for such purposes be deemed an entry under any condemnation proceedings which may be then pending. The Authority shall make reimbursement for any *actual damage* resulting to such lands . . . as a result of such activities" (emphasis supplied). Section 15 (see second and fifth paragraphs) reads in part: "All private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired and placed in its original condition as nearly as practicable, or adequate compensation made therefor, out of funds provided under the authority of this act. . . . Any person damaged in his property by the exercise of any of the powers granted by this act may recover his damages from the Authority under chapter seventy-nine of the General Laws."

[2] General Laws (Ter. Ed.), c. 79, § 10, reads in part: "When real estate . . . has been damaged by the construction . . . of a public improvement or has been entered for a public purpose, but such . . . entry or damage was not effected . . . in accordance with a formal vote or order of the board of officers of a body politic or corporate duly authorized by law . . . the damages therefor may be recovered under this chapter. . . . In case of a specific . . . entry . . . or other act causing . . . damage or depriving the owner of the use of his property permanently or for a definite period of time the damages shall be assessed as of the date of such . . . entry . . . or other act and the right thereto shall vest on such date and a petition for an award of damages therefor under this section may be filed within one year thereafter . . . ." Section 12 reads in part: "In determining the damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel . . . ."

lots. When the questions were not allowed, offers of proof were made that the aggregate fair market value of lots 61–64 and the buildings thereon was $68,000 prior to the placing of survey stakes on these lots and $56,000 after the stakes had been placed. Exceptions were duly saved.

We assume that entry for preliminary surveys upon lots 61–64 could have been permitted without compensation and without violating any constitutional requirement. *Winslow* v. *Gifford*, 6 Cush. 327, 329–330. *Lafontaine's Heirs* v. *Lafontaine's Heirs*, 205 Md. 311, 320–321. See Restatement: Torts, § 211, comment c; Nichols, Eminent Domain (3d ed.) §§ 6.11, 26.22. Compare *Hazen* v. *Boston & Maine Railroad*, 2 Gray, 574, 581; *Brigham* v. *Edmands*, 7 Gray, 359, 362–363; *Providence, Fall River & Newport Steamboat Co.* v. *Fall River*, 183 Mass. 535, 540–541. However, the Legislature (see *United States Gypsum Co.* v. *Mystic River Bridge Authority*, 329 Mass. 130, 137) by St. 1952, c. 354, § 7 (see note 1, *supra*), expressly (a) has permitted the respondent to enter on the land of others to make surveys, and (b) has provided for reimbursement of "any actual damage resulting to such lands."[1] Section 15, paragraph 5 (also quoted in note 1), permits any "person damaged in his property by the exercise of . . . the powers granted by this act" to recover for such damage under G. L. (Ter. Ed.) c. 79. There is no indication in the record that the entry on lots 61–64 to make surveys was authorized by any formal vote or order of the respondent. Accordingly, we assume that G. L. (Ter. Ed.) c. 79, § 10 (quoted, *supra*, note 2) governs any recovery with respect to lots 61–64 in the present case. See *United States Gypsum Co.* v. *Mystic River Bridge Authority*, 329 Mass. 130, 140–141.

The petition in this proceeding refers only to lots 65–67 and lot 80 without making any mention of lots 61–64. All of these lots, both those not taken and those actually taken, were owned by the petitioner in 1953, and for a time there-

---

[1] There thus is here no such want of statutory authority for payment of damages as was found to exist in *Sullivan* v. *Commonwealth*, 335 Mass. 619, if the damage which the petitioner seeks to prove is of a type for which recovery can be had.

after (subject to various mortgages). However, the fore-closure of the mortgage covering lots 61–64 took place be-tween (a) the preliminary survey made on lots 61–64 and (b) the taking of the other land. Lots 61–64 thus were not owned by the petitioner at the time of the taking of the land actually taken, and do not constitute land of the petitioner remaining in its hands after a partial taking of the tract purchased in 1953. Accordingly, recovery for the damage caused to lots 61–64 by the taking cannot now be allowed on the basis referred to in *Valentino* v. *Commonwealth*, 329 Mass. 367, 368, and *Kinney* v. *Commonwealth*, 332 Mass. 568, 571. See Nichols, Eminent Domain (3d ed.) §§ 14.1–14.4; Orgel, Valuation under Eminent Domain (2d ed.) §§ 47–65.

The petitioner argues, however, that, on principles men-tioned in *Chandler* v. *Jamaica Pond Aqueduct Corp.* 125 Mass. 544, 550–551, it is entitled, in connection with its recovery of damages for the taking of the land which it did own in March, 1955, to recover also under this petition for the injuries, if any, caused by the survey stakes to lots 61–64, which it owned at the time of the survey. Whether this contention has merit we need not decide, for the peti-tioner has not offered to prove any substantive facts relating to lots 61–64 which show that it is entitled to recover for any injury whatsoever to those lots caused by the survey.[1]

On the present record, there is no indication of more than trivial physical injury to lots 61–64. The petitioner's theory of the damage (although not outlined in any evidence or offers of proof) appears to have been that the placing of the survey stakes on lots 61–64 scared away potential purchasers by creating doubts about the future of the land, thus reduc-ing its market value.

Where a statute, such as St. 1952, c. 354, § 7, allows re-covery for specified injury to land not taken, recovery is not necessarily limited to actual physical injuries to the property itself, if the injury is "special and direct as distinguished

---

[1] For the same reason, we do not consider whether the failure of the peti-tioner to request that notice be served on the foreclosing mortgagee of lots 61–64 also presents a further barrier to recovery. See G. L. (Ter. Ed.) c. 79, §§ 22, 32.

from remote and consequential." See *Wine* v. *Commonwealth*, 301 Mass. 451, 458. On this record, however, there is no basis for contending that lots 61–64 suffered "special and direct" damage different from that suffered by the owners of other lots in the area. Apart from the insignificant physical damage, the only damage to lots 61–64 mentioned in argument as caused by the survey stakes rested upon the supposition, which proved to be unfounded (compare *National Dock & Storage Warehouse Co.* v. *United States*, 97 Fed. Sup. 706, 708–709 [Ct. Cl.]), that the execution of the turnpike project would involve a taking of some part of lots 61–64. This type of menace the petitioner shared generally with other landowners in the general area. The record suggests no greater uncertainty about the future of lots 61–64 than about other land along or near the general route which the turnpike was expected to follow while it was being surveyed. The record shows no preliminary action by the respondent toward actual condemnation of lots 61–64 themselves [1] and no such action appears to have been contemplated. The only possible substantial injury arises from uninformed public misinterpretation of the presence of the survey stakes. Compare *Meriden* v. *Zwalniski*, 88 Conn. 427, 432–435; Nichols, Eminent Domain (3d ed.) § 14.241; Orgel, Valuation under Eminent Domain (2d ed.) §§ 61–62. The record shows no unreasonable postponement by the respondent of a decision about location causing special loss to the petitioner. Compare *Connor* v. *Metropolitan District Water Supply Commission*, 314 Mass. 33, 41–42.

We think any vague cloud upon the future of lots 61–64 caused by the presence of the survey stakes is at most a temporary, inchoate injury which does not give rise to re-

[1] We need not consider whether, if lots 61–64 had been owned by the petitioner at the time of the actual taking of part of lot 65 and all of lots 66, 67, and 80, damages for injury to lots 61–64 caused by the survey and the taking could have been recovered as *for injury to remaining land caused by a partial taking.* It is possible that they and the buildings upon them might have been regarded as distinct from the unimproved lots wholly or partly taken. See Nichols, Eminent Domain (3d ed.) § 14.3 et seq.; Orgel, Valuation under Eminent Domain (2d ed.) §§ 54–56.

covery on eminent domain principles. See *National Dock & Storage Warehouse Co.* v. *United States,* 97 Fed. Sup. 706, 708–709 (Ct. Cl.). It certainly is too indefinite, conjectural, and general to constitute "such injury as is special and peculiar" to land, not in fact condemned, for which recovery can be had in accordance with the second sentence of G. L. (Ter. Ed.) c. 79, § 12.[1] See *Putnam* v. *Boston & Providence Railroad,* 182 Mass. 351, 353–354; *Bailey* v. *Boston & Providence Railroad,* 182 Mass. 537, 539–540; *McSweeney* v. *Commonwealth,* 185 Mass. 371, 373; *Wine* v. *Commonwealth,* 301 Mass. 451, 458. See also *Whitney* v. *Lynn,* 122 Mass. 338, 343; *United States Gypsum Co.* v. *Mystic River Bridge Authority,* 329 Mass. 130, 140; Nichols, Eminent Domain (3d ed.) § 6.11 at pages 242–245, § 6.42; Hanify, Elements of Damages in Eminent Domain, 34 B. U. L. Rev. 146, 158. Compare *Lentell* v. *Boston & Worcester Street Railway,* 202 Mass. 115, 117, 120–121. Compare also noncompensable injuries from the exercise of the police power, *Barnes* v. *Springfield,* 268 Mass. 497, 511, certiorari denied 281 U. S. 732; *Franco-Italian Packing Co.* v. *United States,* 128 Fed. Sup. 408, 414 (Ct. Cl.).

The evidence offered with respect to lots 61–64 was properly excluded on the record.

2. The petitioner offered evidence of the amount remaining due on a mortgage covering lots 65, 66, 67, and 80 as having a bearing on the loss sustained by the taking of these lots so far as actually taken. We do not need, however, to consider whether evidence of mortgage value is always to be excluded (see *Peirson* v. *Boston Elevated Railway,* 191 Mass. 223, 231–234) in eminent domain matters (compare Nichols, Eminent Domain [3d ed.] § 12.43 at pages 181–182) even if, in a particular case, proof of the amount of a mortgage may have real tendency to establish at least the minimum value of the mortgaged property. The present case,

[1] No intimation is intended whether and to what extent any types of non-physical damage, resulting from a survey, could form the basis of recovery upon a proper showing (a) that the survey had in fact directly given rise to injury; (b) that damage was susceptible of reasonable ascertainment; and (c) that it was "special and direct" injury to the land surveyed.

in any event, has not been shown to be one for the admission of such testimony. There was no offer of proof on the following points: (1) how much of the amount due on the mortgage represented money originally lent and how much, if any, was arrears of interest; (2) the extent to which the security for the mortgage loan was furnished by lot 65 which was taken only in minor part; and (3) the change, or absence in change, in values of the mortgaged property between (a) 1953 when the mortgage was given as a purchase money mortgage in connection with the purchase of lots 61–67 and 80, and (b) the taking in 1955. The absence of a showing on these points, among others, made the evidence of the amount remaining due on the mortgage of little, if any, probative value in establishing the value of the land actually taken and the extent of the injury caused by its condemnation. The trial judge properly excluded this evidence.

*Exceptions overruled.*