260 A.2d 451.

JOHN E. CUNNINGHAM *et ux. vs.* ANGELO A. MARCELLO, *Director of Public Works, State of Rhode Island.*

JANUARY 8, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a petition brought for the assessment of damages caused by the taking by eminent domain for highway purposes of certain unimproved land located in Warwick on the Bald Hill Road opposite the Midland Mall. The Mall is described as one of the largest shopping-center complexes in the New England area. A nonjury trial was held before a justice of the Superior Court. He awarded the petitioners the sum of $115,870 with interest thereon from the date of taking. Judgment was entered and this appeal followed.

The trial was a battle of two real estate experts. One testified for petitioners. The other appeared in behalf of respondent. Both witnesses used the comparable sales method in determining the fair value of petitioners' parcel which contained 57,935 square feet of land. The petitioners' expert stated that in his opinion the subject property was worth about $2.60 a square foot. He completed his multiplication and came up with the figure of $150,631. The respondent's expert placed a value of $1.10 a square foot on the land. He said the Cunningham land had a fair market value of $63,900 on March 14, 1966, the date of condemnation. The trial justice valued the land at $2 a square foot.

John E. Cunningham testified that he and his wife purchased the Bald Hill property in January 1966 for $87,000. It is conceded that at the time of condemnation their land

was encumbered by mortgages totaling $84,699.89. We point to this portion of the testimony because the primary thrust of respondent's appeal is his contention that the trial justice erred in considering the amount of these mortgages as evidence of the value of the land in question. In making this contention, respondent points to the following portion of the trial justice's decision:

> "Although he [respondent's expert] did admit that at the time of the purchase in January this unimproved realty had mortgages on it totaling over $84,000, and in the absence of any explanation, the Court may reasonably infer that people do not take inadequate security for loans made on real estate, especially unimproved real estate, unless there is some other reason for, and no explanation given to this Court why this property should be over mortgaged, if it was over mortgaged, and it certainly would have to be over mortgaged if the Court should take the testimony of the expert for the Respondent, who places the value of the property at the date of condemnation in the amount of $63,900."

We do not find it necessary to dispute respondent's proposition that the mere total of the mortgages outstanding on a piece of real estate in and of itself may not be used as a basis for determining the fair market value of property. We say this because it is convincingly clear from a reading of the trial justice's decision that his ultimate finding was based on the fact that the value of the subject property was enhanced because of its proximity to the shopping-center complex. Its location determined its value in the court's opinion—not the amount of the land's encumbrances. When the trial court began to give his opinion as to the value he would place on petitioners' property, he said:

> "The Court feels that the most important characteristic of a piece of property such as the property in question, which is unimproved realty, is the location. Yes, you can give adjustments, adjustments as to the

size and the shape and time and the topography, but when you come right down to it, the most important characteristic, as far as this Court is concerned, is as to the location."

The court's comments as to the mortgages are better understood after an analysis of the record. We might observe that the record is unusual in that not one objection was raised by respondent to any of the testimony adduced at the trial. The respondent's expert told the court about the mortgages on the land. There were two mortgages. One, he said, was for $14,199.89 while the other was in the amount of $70,500. The expert conceded that he had examined the Cunninghams' deed, and the stamps which were affixed thereto indicated a purchase price of $87,000. When asked by petitioners' counsel if he would consider petitioners' purchase a comparable sale, respondent's expert replied, "Well to be honest with you, I was not certain that it was an arm's length sale."

It is obvious, from our review of the record, that the trial justice's remarks, when he referred to the mortgages outstanding on petitioners' real estate, were directed at the innuendo cast by respondent's expert, that somehow there was more than meets the eye when petitioners acquired this land. The realtor never offered any evidence to the court as to why he harbored the suspicion that he did. The trial justice, after making his observation about the question of the outstanding mortgages, then proceeded to discuss and evaluate the testimony given by the respective experts. Nowhere can we find any indication that his conclusions were influenced in the slightest by the value of the mortgages described by respondent's real estate appraiser. The court rejected the testimony of respondent's expert because most of his comparable sales were of parcels of real estate located a further distance away from the Midland Mall than the comparables offered by petitioners' expert. In making his own judgment, the trial justice, as noted

404

elsewhere, placed great reliance in his belief that petitioners' property· acquired its value because it was just across the street from the Mall.

The respondent also alleges that the trial judge erred when he allowed petitioners' expert to base his opinion on a comparable sale made after the condemnation without having decided initially if, in keeping with the rule of *Manning* v. *Redevelopment Agency,* 103 R. I. 371, 238 A.2d 378, the prior eminent domain proceedings had resulted in an inflation of the value of neighboring property not included in the taking. As we noted before, there is a complete absence in the record of any objections made by respondent to any of the questions asked or replies received from any of the witnesses at the trial. In keeping with our well-settled rule, a failure to make an objection on the record with regard to evidentiary matters precludes a review here of the alleged error committed in the trial court. *Russian* v. *Lipet,* 103 R. I. 461, 238 A.2d 369.

In conclusion, this appeal concerns a case where the parties have submitted their controversy to a justice of the Superior Court sitting without a jury. As we have said so many times before, his findings of fact are to be given great weight and will not be disturbed unless he is clearly wrong or has misconceived or overlooked any material evidence. Here the Court listened to two real estate experts. It is obvious from his decision that, overall, he was more impressed with the petitioners' expert than he was with the respondent's expert. We have reviewed his findings. He has neither misconceived nor overlooked any of the pertinent testimony nor is his decision clearly wrong.

The respondent's appeal is denied and dismissed. The judgment appealed from is affirmed.

*Higgins, Cavanagh & Cooney, John P. Cooney, Jr.,* for petitioners.

*Dominic A. St. Angelo,* Assistant Counsel, for respondent.