312 A.2d 198.

Antonio Parillo *et ux.* vs. Director of Public Works
for State of Rhode Island.

NOVEMBER 15, 1973.

Present: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

Paolino, J. This is a petition for the assessment of damages caused by the respondent taking a portion of the petitioner's land for freeway and highway purposes and for severance damages to the remainder. The case was heard before a justice of the Superior Court sitting without a jury. The only issue was the assessment of damages. The trial justice awarded the petitioners the sum of $179,800 for the portion taken and consequential damages to the remainder. The case is before us on the respondent's appeal from the judgment entered pursuant to such award.

On March 12, 1970, the statement of the taking and the accompanying condemnation plat designated as "land taken for highway-freeway purposes, Interstate Route 295, Plat No. 1443A" was recorded in the office of the town clerk in Johnston.[1]

The petitioners owned property on the northerly side of Hartford Avenue in Johnston, consisting of approximately

---

[1]For convenience we have attached, as exhibits, copies of petitioners' exhibits No. 1 and No. 4, a diagram and a sketch of the property involved in this case.

22.76 acres of land, together with a one-story masonry light industrial building. A portion of petitioners' land was previously leased to a drive-in theatre and a ticket booth was still located on this area. The property had a total frontage of approximately 1,752 feet on Hartford Avenue. The state only condemned a portion of petitioners' land. The area taken consists of 2.62 acres. It was located at the westerly part of petitioners' property and was of irregular shape. It was part of a ramp connecting Freeway I-295 and Hartford Avenue. Neither of the buildings was located within the area taken.

The petitioners presented only one witness, Peter A. Laudati, Jr., a qualified real estate expert. The respondent presented two real estate experts, Walter A. DiPrete and Richard W. Jalbert. All three used the comparable sales method in determining the amount of damages caused to petitioners by the taking of a portion of their land.

Mr. Laudati testified in substance as follows. After identifying the location of petitioners' property he said the area had been developing very rapidly along a commercial line since 1967. The fact that the main freeway route of I-295 had been established in this area just prior to the present condemnation was extremely significant in causing the change. He referred to the various commercial enterprises in the area and said that they were either new or expanding some very rapidly. He also referred to the fact that petitioners' property had extensive frontage on Hartford Avenue.

The land actually taken, as described, had a frontage of 322 feet on Hartford Avenue and a depth of somewhere between 600 and 700 feet. In addition to the 322 feet a narrow strip was taken along a section of the remaining frontage of petitioners' property on Hartford Avenue.

Mr. Laudati said that he used the market data approach and relied on comparable sales in determining the damage

to petitioners' property; that the masonry building was unaffected by the taking; and that, therefore, the use of the market data approach was the proper method of determining damage. He further stated that he treated the entire parcel before and after the taking in determining the fair market value just prior to condemnation and the fair market value after condemnation. Mr. Laudati discussed three comparable sales and then described how he made adjustments to the comparable sales he relied upon, taking into consideration the location, time of the sale, and size of the properties as they compared to petitioners' property. He concluded that one portion of petitioners' land, consisting of 700,800 square feet, had a value of $525,600 at 75 cents per square foot and that when this was added to the value of $3,000 per acre for the 6.68 acres of rear land, or $20,000, the total value of petitioners' property prior to the condemnation was $545,600.

Mr. Laudati went on to explain how he determined the value of the remainder of petitioners' property after the condemnation. In making this determination he divided the property into four segments and treated each separately. In view of the questions raised by respondent in this appeal, we need refer here only to his treatment of two segments.

The first is an area measuring 480 feet along Hartford Avenue and 400 feet in depth, having a total area of 192,-000 square feet. Mr. Laudati said that this area no longer had direct access to Hartford Avenue, and that it could not be subdivided with a direct relation to Hartford Avenue. It had to be joined as rear land to abutting land, since sales in the area indicate a frontage of about 250 feet as the desirable frontage. He further stated that all the development in the neighborhood ranged from 150 to 250 feet frontage, and that prior to the taking this segment could have been subdivided. Mr. Laudati concluded that

the land in this segment, which was worth 75 cents per square foot before the taking, was now worth 35 cents per square foot, for a total value of $67,200 for this segment.

The second segment is located to the east of the area just discussed. It proceeds easterly for a distance of 384 feet, has a depth of 400 feet and a total area of 153,600 square feet. This segment lies behind a line marked "State Highway Line" on the condemnation map and is an extension of a line marked "Freeway Line." Before discussing Mr. Laudati's testimony with respect to the value of this segment after the condemnation, it may be helpful to describe the line separating the portion taken from the remainder of petitioners' land inasmuch as respondent's appeal is based mainly on his claim that Mr. Laudati's testimony relating to the point where the freeway line ended was not correct.

The line separating the portion taken from the remainder curved from the north toward the south, then broke toward the southeast until it met the northerly line of Hartford Avenue. This line was designated as a freeway line from the north to a point in the part running southeasterly, where it became designated both in the description of the taking and of the plat map as a state highway line, from said point to the joinder of said line and the northerly line of Hartford Avenue.

The above-mentioned point was designated in the description of the taking as follows:

"* * * opposite and sixty (60) feet northeasterly from P.C. Station 38+06.25 on said Relocated Hartford Avenue Base Line"

This point is also designated on Sheet No. 4 of Plat No. 1443A in extension of a line along which appears the legend "P.C. Sta. 38+06.25." This line intersects the line indicating the area of the land taken. It is designated as a freeway

line to the left of said point and as a state highway line to the right thereof.

With respect to the second segment, Mr. Laudati testified as follows:

"Now, to my mind I felt that the intent probably is to allow access over this 384 feet. Yet, a question is raised in my mind, and I think it would be in a typical purchaser's, so that I felt there had been some downward adjustment here and I reduced it to sixty cents per square foot, so about fifteen cents per square foot to reflect this question in my mind and the question that would exist in the mind of any typical purchaser as well. So that if, in fact, the State could deny access here, had the right to deny access here, my opinion would have been thirty-five cents per square foot. If it had no right at all to deny access it would be seventy-five, so I'm leaning toward the seventy-five, but reflecting it to some degree, so I accept sixty cents per square foot for this segment. And that came to a total of $92,200."

He said that the balance of petitioners' frontage property, consisting of 249,163 square feet, was unaffected by the taking and remained at its value of 75 cents per square foot for a total of $186,900. The 6.49 rear acreage was also unaffected and was left at $3,000 per acre for a total of $19,500. The total value of the four segments was $365,800, which, in his opinion, was the value of the remainder of petitioners' property immediately after the condemnation. He concluded that the damages sustained by petitioners as a result of the taking was $179,800, the difference between the value before the taking and the value after the condemnation.

As we have previously pointed out, the state presented two real estate appraisal experts who both used the market data approach citing sales they considered comparable. Mr. DiPrete testified that in his opinion the damages to petitioners were in the amount of $19,600. Mr. Jalbert

testified that in his opinion the damages were $34,150. Each described how he arrived at his ultimate determination. Neither felt that there was any severance damage and neither was concerned by the question raised by Mr. Laudati about the location of the highway and freeway lines.

In her decision the trial justice reviewed the testimony of the three real estate experts and the exhibits in evidence. She rejected the testimony of the state's two experts and gave her reasons for so doing. She concluded that there were consequential damages and that frontage was a very important factor of appraisal.

In reviewing Mr. Laudati's testimony she referred to his reliance first on the fact that there was no longer direct access to a segment of 480 feet of frontage on Hartford Avenue, thereby causing a reduction of value after the taking from 75 cents a square foot to 35 cents a square foot for the 192,000 square feet of land behind said freeway line. She thus referred to his testimony concerning the segment behind the highway line. She accepted Mr. Laudati's appraisal testimony as "credible, convincing and probative" and said it was the testimony on which she felt she could rely completely. She then said:

> "In accepting the testimony as given by Mr. Laudati the Court noted in particular how thorough was his analysis. For example, Mr. Laudati's analysis wherein he broke down his after value and adverted to the fact that on 153,600 square feet he had a question in his mind which resulted in lowering the value on this land fifteen cents in his after value because of the State highway line and the freeway line. In connection with this testimony the Court has looked at the exhibits, the plat, the taking plat, and has examined the instrument of the taking and concludes that Mr. Laudati's conclusion was well founded. This is just one indication of the probative quality of his appraisal. The Court agrees with this expert opinion

that a ready and willing buyer, viewing this 153,600 square feet might well be unwilling to pay seventy-five cents per square foot. The Court feels that the depreciation of fifteen cents on this segment which he assigned to it when he reduced it to sixty cents per square foot is reasonable and worthy of acceptance in terms of all the testimony."

Accordingly, she accepted Mr. Laudati's testimony that petitioners had suffered damages in the amount of $179,800.

The respondent contends that the trial justice erred in accepting the opinion of petitioners' appraiser. He argues that the testimony of Mr. Laudati relating to the point where the freeway line ended was not correct. We do not agree.

A careful reading of Mr. Laudati's testimony shows that he was familiar with the location of petitioners' property and with the exhibits which were in evidence and which described the area taken and the area which remained. His testimony also shows that he knew the difference between a freeway line and a state highway line; that he knew that access is available over a state highway line but not over a freeway line; and that he read a description of the taking which indicated that the last 384 feet of the portion taken bounded on a state highway line. What he did say was that he felt that there was no clear demarcation on the condemnation plat of where the freeway line ends and where the state highway line begins and that a prospective purchaser in studying this plat would come to the same conclusion. The trial justice after reading and examining the taking map and description was of the same opinion. On this record we cannot say that the trial justice erred in finding that Mr. Laudati's conclusion was well-founded.

It seems to us that respondent's arguments with respect to Mr. Laudati's testimony about the effect of the freeway-state highway line go to the weight of his testimony. *See*

*McHale* v. *Director of Public Works,* 100 R.I. 770, 219 A.2d 766 (1966).

The respondent cites the following language in 4A Nichols, *Eminent Domain* §14.241 at 14-152 (3d ed. 1971):

> "Damages alleged to flow from the taking of part of a tract are not allowed if they can have no effect upon present market value. Thus, damages that are too contingent, speculative and remote to affect the present market value need not be considered."

It is clear from Mr. Laudati's testimony that his testimony about the segment in question was related to the value of petitioners' property on the date of condemnation. This is borne out by the following question and answer during his cross-examination:

> "36  Q  But for purposes of this hearing we're trying to determine the value on the date of condemnation; wouldn't it be as it existed at the time of condemnation?
>
>      A  This is exactly what I did. I looked at it through the eyes of a typical prudent purchaser who would have knowledge of all these facts and I think this is the way he would treat it, that it isn't certain that access will be provided, but the chances are that it will be so I won't pay as much as if I were absolutely certain, but I will pay something less, a little less."

*Meriden* v. *Zwalniski,* 88 Conn. 427, 91 A. 439 (1914), cited by respondent, is not apposite here. In that case the court said:

> "We think that a depreciation in value of the respondents' remaining lands, caused by an unfounded public belief, is not a damage caused by the applicant's taking of the other lands under its charter. If the belief was not well founded, then the taking and use for reservoir purposes of the other lands will not in fact injure that which remains." *Id.* at 433-34, 91 A. at 441.

In the case at bar we have already held that the trial justice did not err in finding that Mr. Laudati's conclusion was well-founded.

*Onorato Bros.* v. *Massachusetts Turnpike Authority,* 336 Mass. 54, 142 N.E.2d 389 (1957), also cited by respondent, is also not apposite here and, therefore, merits no discussion.

The respondent's remaining contention that Mr. Laudati's expert testimony was not credible, convincing or probative for other reasons is so lacking in merit as to require no further discussion.

The measure of damages applicable in a case involving a partial taking is the value of the land taken at the time it is taken, together with any special or peculiar damages which result to the remaining land. *Hetland* v. *Capaldi,* 103 R.I. 614, 240 A.2d 155 (1968). The petitioners presented expert testimony through Mr. Laudati to prove such damages. The trial justice accepted his testimony and rejected that of the state's experts. Her findings of fact are entitled to great weight and will not be disturbed by this court unless they are clearly wrong or she has misconceived or overlooked material evidence. *Cunningham* v. *Marcello,* 106 R.I. 400, 260 A.2d 451 (1970). The burden was on the respondent, as the appellant, to establish that the findings of the trial justice were clearly wrong or that she misconceived or overlooked material evidence. *Sullivan* v. *Marcello,* 100 R.I. 241, 254, 214 A.2d 181, 188 (1965). The respondent has failed to sustain that burden.

We would affirm the trial justice's findings and award of damages.

Mr. Justice Joslin did not participate.

Mr. Justice Paolino's opinion

◯ Entire Lot 80

◉ Occupied by Hartford Pike Drive-In

◍ Taken for Rt. 295

▦ Occupied by Hartford Pike Drive-In & Taken for Rt. 295

Plat 53

Lot 80
22.76 ± acres

400' depth

Hartford Pike

Lot 21
17.51 acres

N

Scale
3/4" = 240'

Petitioner's Exhibit  1925-A

Plat 1443    Parcel #110
Assessors Plat 53    Lot #80
Total Area 2390 Acres
Johnston, Rhode Island

Mr. Justice Paolino's opinion

KELLEHER, J., whom ROBERTS, C. J., joins, dissenting in part and concurring in part. With regard to that portion of their land that unquestionably abuts the freeway line, the Parrillos have shown the requisite "substantial impairment" of their right of access that was discussed at length in *Aust* v. *Marcello,* 112 R. I. 381, 310 A.2d 758 (1973).

I cannot approve that portion of the trial justice's award which represents the loss in value attributable to the appraiser's apprehension as to a potential "prudent"[1] purchaser's doubt about the extent of access available to the land lying to the rear of the line designated as a State Highway Line. While one must commend the appraiser's detailed breakdown of his before and after analytical valuation of the Parrillos' parcel, I cannot subscribe to his devaluation of this particular portion of the subject real estate because, he alleges, the draftsman has failed to clearly delineate the place where the Freeway Line ends and the State Highway Line begins.

The statement of taking encompasses real estate in the town of Johnston situated between Hartford and Greenville Avenues. The statement is replete with some nine pages of a legal description. The Parrillo property is found in Area B. Area B contains approximately 138 acres. The portion of the description of Area B that is pertinent to the issue in question reads:

"\* \* \*

"thence generally southerly along a Freeway Line, in a straight line, through said Parrillo land to a point opposite and sixty (60) feet northeasterly from P.T.

---

[1]From the size of the award, the Parrillo land can certainly be classified as premium-priced property. Even though the artistry of the mechanical draftsman was flawless, I do not believe that the purchaser whose offer to the Parrillos would be based solely on his perusal of the condemnation plat without any reference to the description which accompanies the plat deserves such an appellation as "prudent."

Station 39+81.52 on said Relocated Hartford Avenue Base Line;

"thence southeasterly along a Freeway Line in a straight line, through said Parrillo land to a point opposite and sixty (60) feet northeasterly from P. C. Station 38+06.25 on said Relocated Hartford Avenue Base Line;

"thence southeasterly along a State Highway Line, in a straight line, through said Parrillo land, through land now or formerly of Carlo and Josephine Iafrate and through said Parrillo land to a point opposite and thirty (30) feet northeasterly from Station 116+00 on said Existing Hartford Avenue Base Line;

"* * *"

It is obvious that a plat map is drawn after the engineer or surveyor has prepared the description. The condemnation plat contains nine sheets of which a copy of sheet 4 is an exhibit. Since one picture is worth a thousand words, the reader's attention is directed to the following sketch. It shows how the Parrillo property appears on the plat. The sketch is not drawn to scale but it contains sufficient pertinent information which one would see if sheet 4 itself could be used instead of the sketch.[2]

It is clear from the sketch (and from sheet 4) that the mechanical draftsman has done his job well. The description speaks of the Freeway Line running generally southerly in a straight line through said Parrillo land to a point opposite and 60 feet northeasterly from P.T. Station 39+81.52, thence southeasterly along a Freeway Line in a straight line through said Parrillo land to a point opposite and 60 feet northeasterly from P.C. Station 38+06.25. The draftsman of the description then refers to a State High-

---

[2]A photostatic copy of a portion of sheet 4 is attached as an appendix. Any attempt to incorporate sheet 4 within the body of this opinion would cause a reduction in its size to a point where its legibility would be substantially impaired.

way Line running in a straight line through the Parrillo land, through land now or formerly owned by Carlo and Josephine Iafrate and then through said Parrillo land to a point opposite and 30 feet northeasterly from Station 116+00 on the Existing Hartford Avenue Base Line. As one looks at and traces the broken line (—— - - —— - -) southeasterly from P.C. Station 38+06.25, he can see that it is clearly labeled as a "State Highway Line." There is no ambiguity as to the symbols on the plat.

I maintain that any ambiguity regarding the symbols is due, in fact, to the experts' (both the Parrillos' and the State's) relying upon their own rough tracings and sketches of the plat. The exhibits prepared by the appraisers are inaccurate and misrepresentative of the area in issue. Their diagrams are not drawn to scale and they incorrectly depict the routing of the highway line and its length. In addition, certain symbols are out of position. It is quite apparent that the experts drew their sketches from the Johnston Tax Assessor's map which has a scale of one inch equaling 240 feet and not from the condemnation map which utilizes a scale of one inch to 100 feet. No attempt was made to adapt the former scale to the latter. This fact complicated the appraisers' interpretation of their graphics. Any examination of these drawings would cause confusion as to the delineation between the two types of lines in question. Had the appraisers made use of and testified from only sheet 4, the problem could have been brought into a proper focus and easily resolved.

Conformity is found between the description and the condemnation plat map. The uncertainty as to the extent of access arises solely from the introduction of a third instrumentality, the aforementioned "art work" of the experts.

The Parrillos' appraiser determined that there were

153,600 square feet[3] of Parrillo land lying behind the State Highway Line which would be affected by the indefinite extent of access. He valued the Parrillos' loss for this uncertainty at 15 cents a square foot. Since it is clear that the Parrillos will continue to have direct access to Hartford Avenue all along this particular area, I would reduce the trial justice's award by $23,040 plus a proportionate diminution in the interest.

The court, as constituted at the time the case was argued, is evenly divided as to the amount of damages due the petitioners and, therefore, the judgment entered in the Superior Court stands.

Petition for reargument denied.

*Jackvony & DeConti, Louis M. Cioci,* for petitioners.

*Stephen F. Mullen,* Chief Special Counsel, Department of Transportation, for respondent.

---

[3]The appraisers testified that parcels selling in the area were 400 feet in depth. He said that the highway line measured 384 feet in length. However, a ruler applied to the line that runs southeasterly from P.C. Station 38+06.25 shows that it goes a distance of approximately 436 feet to the Iafrate land, runs past the Iafrate property and then past more of the Parrillo property for a distance of 175 feet.

Sketch of portion of sheet 4 referred to in Mr. Justice Kelleher's opinion. (See note 2, page 439).

