CLEVELAND BAKERS UNION LOCAL NO. 19 PENSION FUND, APPELLANT, *v.* STATE OF OHIO, DEPT. OF ADMINISTRATIVE SERVICES — PUBLIC WORKS ET AL., APPELLEES.

(No. 42863—Decided August 20, 1981.)

*Mr. Douglas J. Paul,* for appellant.
*Mr. William J. Brown,* attorney general, *Ms. Karen Nowak* and *Mr. Ebert Weidner,* for appellees.

KRENZLER, J. The appellant instituted this lawsuit for declaratory and injunctive relief on March 28, 1979. It sought an order from the court declaring R.C. 163.03[1] to be invalid under the Con-

---

[1] R.C. 163.03 provides:

"Any agency may, upon the notice prescribed in this section, prior to or subsequent to the filing of a petition pursuant to section 163.05 of the Revised Code, enter upon any lands, waters, and premises for the purpose of making such surveys, soundings, drillings, appraisals, and examinations as are necessary or proper for the purpose of the agency under sections 163.01 to 163.22, inclusive, of the Revised Code, and such entry shall not constitute a trespass. Notice of such proposed entry shall be given to the owner or the person in possession by such means as are reasonably available not less than forty-eight hours nor more than thirty days prior to the date of such entry.

"The agency shall make restitution or reimbursement for any actual damage resulting to such lands, waters, and premises and to improvements or personal property located in, on, along, over, or under such lands, waters, and premises, as a result of such activities. If the parties are unable to agree upon restitution or other settlement, damages are recoverable by civil action to which the state or agency hereby consents."

stitutions of the state of Ohio and the United States, and an order enjoining the agents of the state from taking action pursuant to that statute. After the appellant filed a motion for summary judgment, the court granted judgment to the appellees, and found the statute to be constitutional. The appellant filed a timely appeal to this court, and, in its assignments of error, sets forth three independent grounds in support of its position that the statute is unconstitutional. Each argument is separately discussed below.

## I

The appellant contends that R.C. 163.03 is unconstitutional because private property is permitted to be taken for public use without payment of just compensation in violation of Section 19, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

R.C. Chapter 163, entitled "Appropriation of Property," governs the appropriation of real property by the state for public purposes. The right of the state to appropriate property for the public welfare, known as the right of eminent domain, is unquestioned. *Nixon* v. *Admr. of General Services* (1977), 433 U.S. 425; *Railroad Co.* v. *Belle Centre* (1891), 48 Ohio St. 273. In this suit the appellant challenges the constitutionality of R.C. 163.03, which authorizes the agents of the state to "enter upon any lands, waters, and premises for the purpose of making such surveys, soundings, drillings, appraisals, and examinations as are necessary or proper for the purpose of the agency under sections 163.01 to 163.22

* * *." The foregoing statute authorizes the state to enter onto private property prior to or subsequent to the filing of a petition for appropriation by the state. The statute provides, however, that the state must give notice of the entry to the owner of the property not less than forty-eight hours nor more than thirty days prior to the date of the entry.

The appellant specifically contends in its first assignment of error that an entry onto land for purposes of making an appraisal constitutes a "taking" of property, for which the property owner is entitled to prior compensation under Section 19, Article I of the Ohio Constitution.[2]

A property owner is not entitled to any compensation under the Constitution unless his property has been "taken" by the state. The Ohio Supreme Court has held that a "taking" may occur even where the state has not physically dispossessed the owner; action by the state which substantially interferes with the owner's right to quiet enjoyment or disposition constitutes a "taking" within the meaning of the Ohio Constitution:

"In some of the early cases in this country, the courts, adhering to the conception of property as the thing owned, construed the taking alluded to in state constitutions to be a 'taking altogether,' an appropriation and dispossession of the owner, which deprived him of the corpus of the property, and compensation was limited accordingly. The broader view, which now obtains generally, conceives property to be the interest of the owner in the thing owned, and the ownership to af-

---

[2] That section of the Constitution provides:

"Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."

ford the owner the rights of use, exclusion and disposition. Under this broad construction there need not be a physical taking of the property or even dispossession; any substantial interference with the elemental rights growing out of ownership of private property is considered a taking." *Smith* v. *Erie Rd. Co.* (1938), 134 Ohio St. 135, 142 [11 O.O. 571], followed in *Steinle* v. *Cincinnati* (1944), 142 Ohio St. 550, 554-555 [27 O.O. 488].

A temporary but substantial interference with property rights may constitute a "temporary taking." In *Schneider* v. *Brown* (1929), 33 Ohio App. 269, the county occupied the property of the owner for two weeks with equipment and derricks, and drilled six holes, in order to determine the cause of a movement of the ground. This was held to be a "temporary taking" for which the owner was entitled to compensation. The measure of damages for a temporary taking of property is the diminution in the fair market value of the property during the period of the taking. *Columbus* v. *Zanes* (1964), 120 Ohio App. 229 [29 O.O.2d 21].

We find that an entry for purposes of conducting a survey, sounding, appraisal, or examination would not, in the usual case, result in any diminution in value to the property, even during the entry.[3] Such an entry would not substantially interfere with the property rights of the owner, and thus does not constitute a "taking" within the meaning of Section 19, Article I of the Ohio Constitution. If the property is actually damaged in the course of such entry, the property owner may seek damages by civil action. R.C. 163.03.

The overwhelming majority of courts which have considered the issue have held that entry onto private property by a body with the power of eminent domain, for the purpose of conducting preliminary surveys and appraisals, does not amount to a "taking" for which compensation must be awarded. *E.g., Onorato Bros., Inc.* v. *Mass. Turnpike Auth.* (1957), 336 Mass. 54, 142 N.E. 2d 389; *Penn* v. *Carolina Virginia Coastal Corp.* (1950), 231 N.C. 481, 57 S.E. 2d 817; *Puryear* v. *Red River Auth.* (Tex. Civ. App. 1964), 383 S.W. 2d 818. See, generally, Annotation, Eminent Domain: Right to Enter Land for Preliminary Survey or Examination, 29 A.L.R. 3d 1104, 1115-1117.

We are persuaded that the first argument advanced by appellant is without merit.

## II

In the second argument contesting the constitutionality of R.C. 163.03, appellant contends that the provisions of the statute are so lacking in standards as to number, extent, and frequency of inspections as to offend its right to due process of law guaranteed by the Constitutions of the state of Ohio and the United States. Specifically, appellant contends that R.C. 163.03 is void for vagueness because the statute fails to specify the number, extent, and frequency of entries which the state may conduct pursuant to its authority under the statute.

Where a party contends that a statute is unconstitutionally vague, the statute will be judged on its face only if the statute impinges upon the freedoms guaranteed by the First Amendment to the Constitution of the United States. *United States* v. *Powell* (1975), 423 U.S. 87, 92; *United States* v. *National Dairy Products Corp.* (1963), 372 U.S. 29, 36. Where the statute does not affect the First Amendment freedoms of speech, press, religion, or assembly, the vagueness of the statute is determined as

---

[3] An entry for the purpose of making a drilling might, under the authority of *Schneider* v. *Brown, supra,* constitute a "temporary taking" for which prior compensation should be paid. We decline to address that issue in the present case because neither party has indicated that the state intends to make drillings on the property of the appellant.

applied to the facts of the particular case before the court. *United States* v. *Powell, supra; United States* v. *Mazurie* (1975), 419 U.S. 544, 550.

In testing the validity of a municipal ordinance under the vagueness doctrine, the Ohio Supreme Court has stated:

" 'The discretion of the sovereign state, in the exercise of its police power, is fraught with danger to the personal and property rights of private individuals, and the courts have uniformly interfered to restrain the arbitrary and unreasonable exercise of that power to the prejudice of private rights guaranteed by the Constitution of the state. Accordingly, the police power of the state cannot be exercised arbitrarily and unreasonably to affect or unduly interfere with personal rights or private property. The constitutional guaranty of the right of private property would be hollow if all legislation enacted in the name of the public welfare were per se valid. To be truly in the public welfare within the meaning of Section 19 of Article I of the Ohio Constitution, and thus superior to private rights, any legislation must be reasonable, not arbitrary, and must confer upon the public a benefit commensurate with its burden upon private property.' " *Dragelevich* v. *Youngstown* (1964), 176 Ohio St. 23, 27-28 [26 O.O.2d 298], quoting 10 Ohio Jurisprudence 2d 448, Section 371.

In *Dragelevich,* the court held that the ordinance in controversy was "so vague, uncertain, indefinite, and lacking in standards that it offends due process of law." 176 Ohio St. 23 [26 O.O.2d 298], syllabus.

As applied to the particular facts before the court in the case at bar, we cannot say that R.C. 163.03 is vague or uncertain. The statute permits entry onto property to conduct "surveys, soundings, drillings, appraisals, and examinations, as are necessary or proper for the purpose of the agency under sections 163.01 to 163.22 * * *." Those sections of the Revised Code prescribe the method to be followed by state agencies in ap-

propriating real property for public use. The agencies may institute appropriation proceedings only where the agency and the owner are unable to agree on the fair market value of the property. R.C. 163.04. If a petition for appropriation is filed, it must contain "[a] description of each parcel of land or interest or right therein sought to be appropriated * * *." R.C. 163.05(A). Upon filing the petition, the appropriating agency may deposit with the court the value of the property and take immediate possession. R.C. 163.06. If the property owner fails to answer the petition, the court must declare the value of the property to be "as set forth in any document properly filed with the clerk of courts by the public agency." R.C. 163.09(A). The appropriation proceedings are "governed by the law applicable in civil actions in the court of common pleas, except as otherwise provided * * *." R.C. 163.22. The burden of proof is upon the owner to show that the agency has no right to make the appropriation, that the appropriation is not necessary, or that the parties were unable to agree as to the fair market value of the property. R.C. 163.09(B). A resolution of the appropriating agency declaring that the appropriation is necessary is prima facie evidence of such necessity, in the absence of proof showing an abuse of discretion by the agency in determining such necessity. R.C. 163.09(B). If the court finds in favor of the agency on the issues of its right to appropriate, the necessity for the appropriation, and the inability of the parties to agree, the issue of compensation must be submitted to a jury within twenty days thereafter. R.C. 163.09(B).

From the foregoing, we are persuaded that an agency may enter property to conduct surveys, soundings, drillings, appraisals and examinations for the following purposes:

(1) To determine whether appropriation of the property is necessary;

(2) To obtain a description of the property; and

(3) To determine the value of the property.

Under R.C. 163.03, an entry made for the foregoing purposes is not a trespass. Where an entry is made for some other purpose, the remedy of the property owner is an action for trespass or for an injunction. While the number, extent, and frequency of the entries necessary to accomplish the foregoing purposes cannot be precisely determined in advance, the statute does provide an ascertainable standard for determining whether the agency has exceeded its authority under the statute. R.C. 163.03 does not authorize arbitrary or unreasonable entries on private property. The second argument of the appellant is without merit.

## III

The third argument upon which appellant bases its claim of unconstitutionality of R.C. 163.03 is that a warrantless search of private property is permitted in derogation of rights protected by Section 14, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

The right of the state of Ohio to enter onto private property for the purposes of obtaining a description of it, to determine its value, and to determine the necessity of appropriating the property is upheld in our disposition of the second error assigned by appellant. For its third assigned error, the appellant contends that, notwithstanding the right of the state to enter upon private property for such purposes, entry may not be had in any particular instance without the consent of the owner or a search warrant. We disagree.

First, it is necessary to read R.C. 163.02-163.05 *in pari materia*.

As a condition precedent to the agency filing an appropriation complaint, it is necessary that a legitimate offer to purchase be made and that this offer to purchase be based on fair appraisal. R.C. 163.05 indicates that an agency must meet the requirements of R.C. 163.04 before commencing an appropriation action. Further, the appropriation petition must contain a statement showing that the requirements of R.C. 163.04 have been met. R.C. 163.04 provides that appropriations can only be made after the agency and the owner are unable to agree on a price.[4] R.C. 163.04 cannot have been intended to create a sham negotiating procedure whereby the agency is permitted, in bad faith, to make an offer to purchase at a price grossly disproportionate to the property's true value, thus assuring that the property owner will never reach agreement with the agency. R.C. 163.04 stands for the proposition that appropriation shall be made only after the agency and the owner are unable to agree as to price where the agency has made a legitimate offer. To make a legitimate offer, the agency must be able to make a fair appraisal of the property. To make a fair appraisal of the property, the agency will have to go onto the property. R.C. 163.03 provides for such a necessary entry upon the property by an agency.

R.C. 163.03 is clear and unambiguous. It provides sufficient limitations and constraints upon a governmental agency. The agency is permitted to go upon the lands *only* after the proper notice is given. If damage results, the agency must make restitution or reimbursement for such actual damage.

In the event that the agency is unreasonable or arbitrary in the number of times it goes on the property, the prop-

---

[4] While R.C. 163.04 does not specify what the owner and the agency must be unable to agree upon as a condition precedent to an ap-

propriation action, disagreement as to purchase price would be the most important area of disagreement.

erty owner has available the remedy of a restraining order or injunction. If agencies are arbitrary or unreasonable, courts have uniformly interfered to restrain such arbitrary and unreasonable exercise of the power to the prejudice of private rights guaranteed by the Constitution of the state. See *Dragelevich* v. *Youngstown, supra,* at 27-28.

R.C. 163.03 is a reasonable statute which protects private property rights while striking the necessary balance between state interests and private property rights.

Moreover, a pre-appropriation land entry has a fundamentally different character than the other state entries where search warrants are required. Typically, search warrants are imposed when the state engages in hostile "fishing expeditions." In criminal cases, the state is looking for evidence to use in prosecuting an individual. Criminal penalties, including imprisonment, may follow. In the civil area, warrants have been imposed where the state acts with similar hostility. Searches by state officials of private property are made to determine the property owner's compliance with applicable fire, health, housing and safety codes. Discovery of code violations can lead to severe penalties. Again, the government is engaged in a hostile fishing expedition to discover whether the owner has failed to comply with the law.

The cases cited by appellant in support of its position all share the common theme of the government seeking evidence to determine whether the property owner has failed to obey the law.

The United States Supreme Court cases cited by appellant in which the court imposed a search warrant requirement all fit this pattern. In *Camara* v. *Municipal Court* (1967), 387 U.S. 523, the defendant was charged with a criminal violation for refusing to permit a housing inspector to enter his leasehold to inspect to determine whether the city's housing code had been violated. In *See* v. *Seattle* (1967), 387 U.S.

541, the defendant was convicted of refusing to permit the Seattle Fire Department to inspect his commercial warehouse. The inspection was part of the city's program to insure compliance with the city's fire code. In *Marshall* v. *Barlow's, Inc.* (1978), 436 U.S. 307, the issue was whether federal officials could conduct a warrantless search of a business premises under OSHA to inspect for safety hazards and violations of OSHA regulations.

Appellant also relies upon the Ohio Supreme Court case of *Wilson* v. *Cincinnati* (1976), 46 Ohio St. 2d 138 [75 O.O.2d 190]. In *Wilson,* a Cincinnati ordinance provided that a seller of residential housing property was required to tender to a prospective buyer a certificate that the property had been inspected by the Director of Buildings and Inspections, prior to entering into a contract of sale for the property. Such certificates were issued only after warrantless inspections of the property by municipal authorities. As in the other cases cited by the appellant, the housing inspections were to be made to determine whether the housing code had been violated. The Cincinnati ordinance further provided that a seller's failure to tender a valid inspection certificate to a prospective buyer subjected the seller to criminal penalties. Under these circumstances, the Ohio Supreme Court held that the imposition of criminal penalties upon the seller for his failure to tender the certificate violated the seller's constitutional rights.

Thus, in all of the cases cited by appellant, the state was an adversary of the property owner.

In contrast to this, in a pre-appropriation entry made by the state pursuant to R.C. 163.03, the state is merely seeking to make appraisals or to make surveys, soundings, drillings and examinations necessary or proper for a possible future appropriation. Nothing is being sought which could be used *against* the owner to penalize him. In fact, an accurate, fair appraisal of the property made by the agen-

cy would *benefit* the property owner. The agency would be able to make an offer to purchase at a price which would more accurately represent the value of the property. The possibility of agreement between the agency and the owner would be greater. Thus, the costs and difficulties of an appropriation proceeding in court could be avoided. Given these factors, a property owner ought to welcome an agency's pre-appropriation entry onto his property.

We note, too, that appellant has cited no reported case which holds a statute similar to R.C. 163.03 unconstitutional because it does not require that an agency seek a search warrant for entry onto private property prior to the initiation of appropriation proceedings.

We conclude that neither the owner's consent nor a search warrant is required for a pre-appropriation entry onto private property by a state agency acting pursuant to R.C. 163.03. Under both the federal and state constitutions, R.C. 163.03 is constitutional. The appellant's third argument is without merit.

For the above reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

PARRINO, J., concurs.

JACKSON, C.J., dissents.

PARRINO, J., concurring. I would also affirm the judgment but wish to express an additional reason for my concurrence relating to appellant's third argument.

It is clear that R.C. 163.03 grants to an appropriating agency the authority to enter real property for the purposes set forth in that statute.

The issue in appellant's third argument is whether an agency seeking to enter property pursuant to the provisions of R.C. 163.03 must obtain a search warrant prior to such entry. It is my opinion that the agency is not required to secure a search warrant to accomplish the purposes set forth in R.C. 163.03.

However, where entry to a building for purposes of inspection and appraisal is denied and it becomes evident that physical resistance or a clash between representatives of the agency and the owner is likely, the agency should not forcibly enter the property. In such circumstances it should seek to obtain a judicial order enjoining the property owner from interference with the rights conferred on the agency under R.C. 163.03. See, *e.g., Duke Power Co.* v. *Herndon* (1975), 26 N.C. App. 724, 217 S.E.2d 82; *Lewis* v. *Texas Power & Light Co.* (Tex. Civ. App. 1955), 276 S.W.2d 950. The use of such injunctive remedy fully protects both parties and assures a peaceful and orderly compliance with R.C. 163.03 and related statutes.

Accordingly, I find that appellant's third argument is without merit.

JACKSON, C.J., dissenting. I concur in the first three paragraphs of the syllabus, and the disposition by the majority of the first two errors assigned by appellant. However, I am persuaded that there is merit in appellant's third argument which challenges the constitutionality of R.C. 163.03. Consequently, I dissent from the majority's disposition of that argument, and from the fourth paragraph of the syllabus.

The majority holds that the state is constitutionally entitled to enter onto private property over the objection of the property owner, without obtaining a search warrant. There is no authority cited by the majority for this proposition. Instead, it distinguishes three United States Supreme Court cases, each of which held that governmental officials may *not* enter private property for purposes of conducting an administrative search, without obtaining either the consent of the owner or a search warrant. *Camara* v. *Municipal Court* (1967), 387 U.S. 523; *See* v. *Seattle* (1967), 387 U.S.

541; *Marshall* v. *Barlow's, Inc.* (1978), 436 U.S. 307. The distinguishing factor, according to the majority, is that in each of these cases the governmental entity was an "adversary" of the property owner, whereas in the case at bar the government is merely trying to extend a "benefit" to the property owner, namely, to appraise the property in the course of appropriating it. The characterization of such an appraisal as a "benefit" seems dubious; one might with equal validity argue that the federal OSHA inspectors in *Marshall* v. *Barlow's, Inc., supra,* were merely assisting the owner of the property to keep its premises safe, and thereby meant to confer a benefit.

Even if the distinction drawn by the majority is accepted, the Supreme Court has already ruled that the warrant requirement of the Fourth Amendment applies *regardless* of whether entry is sought for an adversarial purpose. The view that the primary interest protected by the Fourth Amendment is that of self-protection from prosecution was the holding of the Supreme Court in *Frank* v. *Maryland* (1959), 359 U.S. 360. *Frank* v. *Maryland* was overruled, and the self-protection thesis was rejected, in *Camara*

v. *Municipal Court, supra*.[5] The court stated in *Camara* that:

"The basic purpose of * * * [the Fourth] Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." 387 U.S. at 528.

The appellant's right to privacy is not absolute; it must bend before the right of the state to enter property to conduct appraisals prior to the initiation of appropriation proceedings. However, where the property owner refuses to permit the state to enter onto its land, it is for the judicial branch, and not the executive, to determine whether the entry is justified.

Several purposes are served by requiring a warrant. The court stated in *Marshall* v. *Barlow's, Inc., supra,* 436 U.S. at 323, that:

"The authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search. A warrant, by contrast, would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute,

---

[5] In overruling the *Frank* opinion, the court stated:

"To the *Frank* majority, municipal fire, health, and housing inspection programs 'touch at most upon the periphery of the important interests safeguarded by the Fourteenth Amendment's protection against official intrusion,' 359 U.S., at 367, because the inspections are merely to determine whether physical conditions exist which do not comply with minimum standards prescribed in local regulatory ordinances. Since the inspector does not ask that the property owner open his doors to a search for 'evidence of criminal action' which may be used to secure the owner's criminal conviction, historic interests of 'self-protection' jointly protected by the Fourth and Fifth Amendments are said not to be involved, but only the less intense 'right to be secure from intrusion into personal privacy.' *Id.,* at 365.

"We may agree that a routine inspection of

the physical condition of private property is a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime. For this reason alone, *Frank* differed from the great bulk of Fourth Amendment cases which have been considered by this Court. But we cannot agree that the Fourth Amendment interests at stake in these inspection cases are merely 'peripheral.' *It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior. For instance, even the most lawabiding citizen has a very tangible interest in limiting the circumstances under which the sanctity of his home may be broken by official authority, for the possibility of criminal entry under the guise of official sanction is a serious threat to personal and family security."* 387 U.S. at 530-531. (Emphasis added.)

and is pursuant to an administrative plan containing specific neutral criteria. Also, a warrant would then and there advise the owner of the scope and objects of the search, beyond which limits the inspector is not expected to proceed." (Footnotes omitted.)

In a practical context, the warrant serves as evidence to the property owner that the agent has authority to enter the premises. *Marshall* v. *Barlow's, Inc.,* 436 U.S. at 312; *See* v. *Seattle,* 387 U.S. at 543.

As noted by the Supreme Court in *Camara, See,* and *Marshall,* a governmental agency conducting an administrative inspection need not meet the same strict requirements for showing "probable cause," as in the case of searches made to discover evidence of criminal conduct. The court held in *Marshall* that:

"Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].' *Camara* v. *Municipal Court,* 387 U.S., at 538. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights." 436 U.S. at 320-321. (Footnotes omitted.)

In the case at bar, the state might satisfy its duty to show "probable cause" for an entry under R.C. 163.03 by making the following showing to a neutral magistrate:

"(1) That the agency has the power of eminent domain;

"(2) That the agency is considering whether to appropriate the property in question; and

"(3) That the entry is for the purpose of determining whether appropriation of the property is necessary, obtaining a description of the property, or determining the value of the property."

The requirement of·a warrant does not impose an unreasonable burden upon the exercise of the right of eminent domain by the state. I am convinced that such a requirement would effect a balance between the right of the state to enter onto private property prior to initiating proceedings for appropriation, and the right of property owners to be secure from unreasonable intrusions into their privacy. The third argument advanced by appellant is, in my considered opinion, well taken.

I would therefore reverse the decision of the trial court and find R.C. 163.03 to be unconstitutional, to the extent that it permits the state to enter onto private property prior to the initiation of appropriation proceedings without obtaining either a warrant or the consent of an owner.